Madeline **RITTER**, Appellant,

v.

**MOUNT ST. MARY'S COLLEGE**, Appellee.

No. 86–3015.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 8, 1986.

Decided April 2, 1987.

Rehearing Denied May 28, 1987.

Carol E. Tracy (Dona S. Kahn, Harris and Kahn, Philadelphia, Pa., on brief), for appellant.

Neil J. Dilloff (Jonathan D. Smith, Piper & Marbury, Baltimore, Md., on brief), for appellee.

Before ERVIN, CHAPMAN, and WILKINS, Circuit Judges.

CHAPMAN, Circuit Judge:

This suit alleging age and sex discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, the Equal Pay Act of 1963 (EPA), 29 U.S.C. § 206(d) and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621, *et seq.* involves both legal and equitable claims. The district court dismissed the plaintiff's legal claims under EPA and ADEA and conducted a bench trial on the equitable claim under Title VII. This court remanded the case for trial on the legal claims, finding their dismissal to be error.[1] The question presented in this appeal is whether the findings of fact made by the trial judge in the Title VII equitable suit should collaterally estop the relitigation of those facts before a jury on the remanded EPA and ADEA legal actions. Although the plaintiff has been denied her right to a jury trial on the legal theories, we are persuaded by *Parklane Hosiery Company, Inc. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), that the interests of the judicial system in the prudent use of its limited resources permit the doctrine of collateral estoppel to operate to preclude relitigation of these issues before the jury. Thus, we affirm the district court's grant of summary judgment to the defendant on the plaintiff's legal claims.

I.

Mount Saint Mary's College ("College") is the oldest independent Catholic institution of higher learning in the United States. Located in Emmitsburg, Maryland, it provides a liberal arts education to its students. Its faculty consists of both laymen and clergy.

The College employed Madeline Ritter, the appellant, as an assistant professor of education from September 1973 until June 1980. Mrs. Ritter is a Caucasian woman, at that time in her fifties. In addition to her teaching duties, Mrs. Ritter served as acting chairman of her department and developed elementary education courses. She received favorable evaluations from her students during the course of this employment.

Before 1977, tenure for faculty members at the College was easily attained after seven years service. In 1977, the Board of Trustees of the College appointed Robert J. Wickenheiser as President and instructed him to establish a standard of academic excellence. He was directed to upgrade the quality of the College's faculty by the imposition of a new tenure policy. The College's new policy held that tenure "is not automatic, but the result of demonstrated excellence as a teacher and scholar." In particular, the handbook specifies that a tenure applicant should demonstrate "continued scholarly growth and commitment." Whether a candidate possessed a terminal degree in his field (a Ph.D. or the highest degree granted in the particular academic discipline) was also listed as one of the relevant criteria in the tenure decision. Mrs. Ritter lacked a terminal degree and had never published, although she had apparently taken some graduate courses at the University of Maryland.

Mrs. Ritter became eligible for tenure consideration in 1978. As part of the new tenure process, Dr. Wickenheiser received evaluations and recommendations from academic department chairmen, the Faculty Affairs Committee, and the Dean of the College.

Several department chairmen criticized Mrs. Ritter's lack of scholarly achievement, citing her failure to publish articles or books in her field. They concluded that

---

1. *Ritter v. Mount Saint Mary's College,* 738 F.2d 431 (4th Cir.1984) held that the EPA and ADEA actions did not present a significant risk of infringement upon the First Amendment rights of Mount Saint Mary's College.

her prospects for scholarly growth were poor. The new chairman of the Education Department, John Popenfus, recommended that the College grant Mrs. Ritter tenure subject to several restrictive conditions not usually associated with a tenured college or university faculty member. He also rated Mrs. Ritter "poor" in several evaluation categories. The Faculty Affairs Committee also recommended that Mrs. Ritter receive tenure. Several members of that committee, however, testified that Dr. Wickenheiser's later decision to deny tenure was academically defensible and implied that their recommendation was prompted more by their sympathy for Mrs. Ritter (who had an ill husband) than by their respect for her scholarly attainment. Finally, Dean John Campbell recommended that the College deny Mrs. Ritter's tenure application. He found that Mrs. Ritter lacked the academic preparation and accomplishments necessary to justify the granting of tenure.

After considering these evaluations, Dr. Wickenheiser concluded that Mrs. Ritter fell short of the requirement of demonstrated excellence in various academic categories, and "unequivocally judged Mrs. Ritter not to be qualified for tenure." Mrs. Ritter appealed the denial, but the Executive Committee of the College Board of Trustees upheld Dr. Wickenheiser's decision.

In 1980 Mrs. Ritter filed a complaint in the United States District Court for the District of Maryland. She alleged that the College had violated her rights as secured by Title VII of the Civil Rights Act of 1964, the Equal Pay Act of 1963, and the Age Discrimination in Employment Act.

■ The College filed a Motion to Dismiss which was treated by the district court as a Motion for Summary Judgment pursuant to Fed.R.Civ.P. 12(b)(6). On August 5, 1980, the district court granted the Motion to Dismiss the EPA and ADEA

claims on the grounds that the Supreme Court's ruling in *NLRB v. Catholic Bishops of Chicago,* 440 U.S. 490, 99 S.Ct. 1313, 59 L.Ed.2d 533 (1979), dictated that the two acts did not apply to religious institutions such as the defendant college. The district court, however, denied the motion to dismiss the Title VII claim. In light of the dismissal of the EPA and ADEA claims, the College filed a motion to strike the plaintiff's jury trial demand, which motion was unopposed.[2]

The district court, sitting as the fact finder, conducted the trial of Mrs. Ritter's Title VII claim. The trial consisted primarily of an attack upon the qualifications of John Popenfus, who was granted tenure by the College in 1979. The district court found that (1) Mrs. Ritter was not qualified for tenure at the College, and (2) Dr. Popenfus was clearly more qualified than the plaintiff. The court thus awarded judgment for the College with costs.

The plaintiff and defendant thereupon filed cross-appeals to this court. Mrs. Ritter appealed the dismissal of her EPA and ADEA claims as well as the denial of her Title VII tenure claim. On June 8, 1984, this court reversed the district court's decision that the provisions of the EPA and the ADEA do not apply to a church-sponsored college, and remanded these claims for "further consideration." This court affirmed the judgment against Mrs. Ritter on the Title VII claim. Specifically, this court declined to disturb the district court's factual finding that Mrs. Ritter was not qualified for tenure. This court also affirmed the district court's denial of the College's request for its attorney's fees.

After remand, the College petitioned the district court for summary judgment on the EPA and ADEA claims. The college argued that, because the ADEA and EPA claims had common elements with the Title VII claim, the issues determined by the

---

2. This court disagrees with the appellee's argument that the appellant's failure to oppose the motion to strike the demand for a jury trial constituted a waiver of that right for the purposes of the legal claims later remanded. Once the District Court had dismissed the plaintiff's

ADEA and EPA claims, the plaintiff no longer had a right to a jury trial. Therefore, it would seem odd to require the plaintiff to assert, upon penalty of waiver, a right which she no longer had.

court in the Title VII claim collaterally estopped the relitigation of those issues before a jury.

Recognizing that the issues involved were identical, the plaintiff filed, under Fed.R.Civ.P. 60(b)(5), a motion to vacate the judgment on the Title VII claim, in order to permit the jury to find the facts free of the court's judgment. On September 3, 1985, the district court found that it lacked authority to vacate this court's Title VII affirmance, and consequently denied the plaintiff's motion. The district court then found that the factual findings reached in the Title VII suit collaterally estopped the plaintiff from establishing a prima facie ADEA claim, because the two causes of action contained the identical element: that the plaintiff must demonstrate that she was qualified for tenure at the College. The motion on the EPA claim was denied without prejudice to permit the plaintiff to conduct further discovery. The district court informed Mrs. Ritter, regarding her EPA claim, that she "must show comparisons with individuals *other than* John Popenfus, a person the court has already ruled more qualified than the plaintiff during the relevant time period." On November 1, 1985, Mrs. Ritter submitted her memorandum on the EPA claim, again identifying John Popenfus as her "only valid job comparator." The district court then granted the College's Motion for Summary Judgment on the EPA claim.

On December 5, 1985 the College filed a bill of costs in the district court, which bill was reduced by the clerk of the court. Mrs. Ritter filed a motion to review the taxation of costs, which the district court denied.

Mrs. Ritter appeals the district court's denial of her motion to vacate the Title VII judgment, and its refusal to allow the ADEA and EPA claims to be tried before a jury. She also appeals the award of costs.

## II.

Had the district court not erroneously dismissed the appellant's legal claims, a jury, and not the court, would have determined the facts arising out of Mrs. Ritter's denial of tenure. *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959) and *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962), stand for the proposition that, where legal and equitable claims are contained in the same set of facts, the right to a jury trial, which the legal claims permit, should predominate, precluding the prior determination of the factual issues by a court sitting in equity. A trial court should, whenever possible, preserve the right to a jury trial, and "only under the most imperative circumstances ... can the right to a jury trial of legal issues be lost through the prior determination of equitable claims." *Beacon Theatres* at 510–11, 79 S.Ct. at 957.

The broad principle set forth in *Beacon Theatres* and *Dairy Queen* has been delimited by later Supreme Court decisions. In *Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966), and *Parklane Hosiery Company, Inc. v. Shore,* 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979), the Supreme Court permitted findings of fact found by a court in equity to preclude later jury determinations of those same facts. In *Katchen,* the court permitted a Bankruptcy Judge to decide both equitable and legal claims pursuant to the bankruptcy law's summary procedures. The court stated that, "[i]n neither *Beacon Theatres* nor *Dairy Queen* was there involved a specific statutory scheme contemplating the prompt trial of a disputed claim but without the intervention of a jury." *Id.* at 339, 86 S.Ct. at 478. In *Parklane* the court permitted the offensive use of collateral estoppel to prevent the relitigation before a jury of facts found in an equity case. The court noted that at common law a litigant "was not entitled to have a jury determine issues that had been previously adjudicated by a chancellor in equity." *Parklane,* 439 U.S. at 333, 99 S.Ct. at 652. The court stated that *Beacon Theatres* was "no more than a general prudential rule." Thus, "an equitable determination can have collateral-estoppel effect in a subsequent legal action and ... this estoppel does not violate the

Seventh Amendment." *Id.* at 335, 99 S.Ct. at 653.

The appellant has cited decisions of lower federal courts which, contrary to the rule enunciated in *Parklane*, have held that a prior equitable determination cannot collaterally estop the relitigation of the same issues in a later jury trial. *See Bouchet v. National Urban League, Inc.*, 730 F.2d 799 (D.C.Cir.1984); *Calnetics Corp. v. Volkswagen of America, Inc.*, 532 F.2d 674 (9th Cir.), *cert. denied*, 429 U.S. 940, 97 S.Ct. 355, 50 L.Ed.2d 309 (1976); *Heyman v. Kline*, 456 F.2d 123 (2nd Cir.), *cert. denied*, 409 U.S. 847, 93 S.Ct. 53, 34 L.Ed.2d 88 (1972). These cases pre-date *Parklane*, with the exception of *Bouchet*, in which the proposition that the use of equitable findings to estop collateral relitigation before a jury violates the party's right to a jury trial is made in dicta, the case decided on jurisdictional grounds. The *Bouchet* proposition is, moreover, set forth without reference to *Parklane*, despite the clear relevance of that case to the issue presented. We find these lower court opinions unpersuasive in light of the rule established in *Parklane*.

The litigants have each based much of their arguments on the "policies" underlying the estoppel doctrine, and the case does present the interesting issue of the conflict between the interests of the judicial system in a speedy and economical resolution of litigation versus the apparently unfair penalization of the appellant in denying her a jury trial because the trial judge erred in striking her legal claims. This court need not involve itself in the laborious and inconclusive policy analysis suggested by the parties on this issue, however, because the Supreme Court has already undertaken this policy analysis for us. *Parklane* decided that the judicial interest in the economical resolution of cases, which interest underlies the doctrine of collateral estoppel, does override the interest of the plaintiff in retrying before a jury the facts of a case determined by a court sitting in equity.

■ The fact that the judge in this case was in error in dismissing the legal claims,

whereas in *Parklane* the estoppel arose from a prior, separate suit, is irrelevant. The effect of the error, just like the "effect" of the prior suit in *Parklane*, is the same: Issues on which the plaintiff had a right to jury determination were tried to the court. What the appellant in this case is in reality concerned about is not the error of the district court, which was rectified, but rather the "harm" of the denial of a jury trial, which resulted from that error. The Supreme Court has already decided that the harm complained of is insufficient to override the judicial interest in the speedy resolution of disputes. If the rule were otherwise, then each time a legal claim is dismissed, this court would hear an interlocutory appeal that would in essence involve the merits of the claim, even though a record had not been developed before a fact finder. In the alternative, the litigants would conduct a trial to the bench, with the full knowledge that all could go for naught if any of the legal claims were reversed and a jury were entitled to determine the same facts on a clean slate. In this latter instance, the incentives of the litigants to litigate effectively would be diminished; moreover, needless time and expense would be undertaken. Thus the better rule, as enunciated in *Parklane*, is for the judge-determined issues to stand as the facts of the case. One trial of common facts is enough.

The appellant also argues that, because collateral estoppel is "collateral," it should only serve to preclude the relitigation of issues determined in a *prior* suit, and because the issue presented in this case involves the use of estoppel within the same suit, the doctrine of collateral estoppel should not apply.

■ It is indeed true that the doctrine of collateral estoppel was designed to bar the relitigation of issues determined in a prior suit. The "prior suit" notion merely reflects, however, the usual circumstance under which the issue of whether to apply collateral estoppel arises. The prior suit

"requirement" protects no interests that are relevant to this suit.[3]

The limitations on the use of collateral estoppel prevent the use of the doctrine against persons who either were not a party to the former suit, or did not have their interests substantially protected therein. Although there has been a marked departure from this "mutuality" requirement traditionally limiting the use of collateral estoppel, that departure has been conducted with a great degree of caution in light of the inherent danger in binding persons by judgments to which they were not a party. In this case, no factors warranting caution are present. This "second" suit involves the same parties, the same issues arising out of the same set of facts, and the same court. It is this "sameness" or mutuality of parties in interest which serves as the basis for the development of collateral estoppel doctrines. This case is not the extension of collateral estoppel to uncharted areas beyond mutuality, but rather stands as the classic case in which the court can utilize the doctrine of collateral estoppel without fear of denying a litigant a right to argue his claims to the best of his ability before a competent court. It would be absurd to say that the requirement of a "prior suit" means that the facts found in a single case cannot bind the parties in that same case. Indeed, if the parties were not bound by the facts found in the very same case which they were litigating, then the judgments of courts issued during trial would become irrelevancies.

We have decided that the facts determined in the Title VII trial can have preclusive effect on the legal claims,[4] and we must now determine whether the facts found in the Title VII trial are dispositive of the ADEA and EPA theories so as to warrant summary judgment.

## A. The ADEA Claim

■ This court has "borrowed the principles" enunciated in the Title VII case of *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) for resolution of ADEA cases. *Smith v. University of North Carolina*, 632 F.2d 316, 332 (4th Cir.1980). According to *McDonnell Douglas*, plaintiff has first to prove a prima facie case consisting of four elements: (1) she is a member of a protected class (age and sex); (2) she was qualified for tenure; (3) despite her qualifications, she was rejected; and (4) after her rejection the position remained open and the defendant continued to seek or accept applications from persons of her qualifications. *Lieberman v. Gant*, 630 F.2d 60, 63 (2nd Cir.1980). The district court, in its trial on the Title VII claim, found that Mrs. Ritter was not qualified for tenure and that her replacement (Popenfus) was more qualified than Mrs. Ritter. The Court of Appeals affirmed the district court's denial of Mrs. Ritter's Title VII claim on the grounds that the district court did not clearly err in finding Mrs. Ritter to be not qualified for tenure.

■ The plaintiff in an ADEA action must show that he was qualified for the job. *Smith, supra,* at 332. Because we have determined that the findings of the district court in the Title VII cause of action can estop the relitigation of those issues under the ADEA cause of action, then Mrs. Ritter is bound by the court's finding that she was not qualified for tenure. Therefore, she cannot establish a prima facie ADEA case. We affirm the district court's grant of summary judgment on the ADEA claim.

---

**3.** The only condition that such a "requirement" might be thought to ensure is that the prior determination of fact was before a court of sufficient authority to bind the court in a later suit. If, for example, the prior suit had been merely an administrative proceeding, then collateral estoppel arguably might not in some circumstances prevent the relitigation of the same issues before a common law court. This interest in ensuring the competency and authority of the court deciding the "prior suit" is not at stake in this litigation: indeed, the "prior court" is the same court before which the plaintiff asks for relitigation.

**4.** Because the doctrine of collateral estoppel precludes the relitigation of the facts found in the Title VII suit, the district court was correct in finding that it had no grounds for vacation under Rule 60(b)(5).

Appellant also argues that she was denied an opportunity to litigate her various other claims for relief under the ADEA, including systemic age discrimination and disparate treatment, because of the district court's erroneous dismissal of her legal theories under *Catholic Bishops*. In order to raise an ADEA claim in federal court, however, a claimant must first resort to appropriate state administrative proceedings. *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 753, 99 S.Ct. 2066, 2070, 60 L.Ed.2d 609 (1979). In this case, appellant's complaint to the Equal Employment Opportunity Commission of Maryland clearly alleged only a denial of tenure claim. Thus, Mrs. Ritter has not met the jurisdictional prerequisite to arguing these other theories in federal court.

## B. The EPA Claim

Section 6(d)(1) of the Equal Pay Act provides, in part:

(d)(1) No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, *except* where such payment is made pursuant to ... (iv) a differential based on any other factor other than sex ... (emphasis supplied).

Once the plaintiff satisfies his burden of establishing a prima facie case, the burden shifts to the employer to prove, by a preponderance of the evidence, that the pay differential is justified by one of the express statutory exemptions, including a "factor other than sex." *See Corning Glass Works v. Brennan*, 417 U.S. 188, 196, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974); *Hodgson v. Fairmont Supply Company*, 454 F.2d 490, 497 (4th Cir.1972).

A difference in qualifications between the plaintiff and the "job compara-

tor," the person or persons to whom the plaintiff chooses to compare her job status, salary, etc. for the purposes of establishing liability on an EPA claim, can constitute a "factor other than sex." *See e.g., Equal Employment Opportunity Commission v. Aetna Insurance Company*, 616 F.2d 719, 722 (4th Cir.1980). The district court has already determined, in the Title VII element of the action, that Popenfus is "clearly more qualified" for tenure than is Mrs. Ritter. Thus, if that determination is allowed to have collateral estoppel effect, then the disparity in salary between Popenfus and Mrs. Ritter is attributable to a factor other than sex. Assuming that Mrs. Ritter proposed no job comparator other than Popenfus, the College would be entitled to summary judgment.

The question of whether the district court's finding that Popenfus and Mrs. Ritter were not of equal qualifications should serve to estop the appellant from establishing a *prima facie* case under the EPA theory is not easily resolvable. A corollary to the general rule of collateral estoppel is that, where the court in the prior suit has determined two issues, either of which could independently support the result, then neither determination is considered essential to the judgment. Thus, collateral estoppel will not obtain as to either determination. 4 Wright, *Law of Federal Courts* § 100A (1983). If one of the two determinations is upheld on appeal, however, collateral estoppel can obtain as to that issue.

The district court in this case made two determinations in resolving Mrs. Ritter's Title VII claim. This court affirmed that decision specifically on the grounds that one of the determinations, the fact that Mrs. Ritter was not qualified for tenure, was not clearly erroneous. Therefore, one might argue that the district court's other finding, that Popenfus was clearly more qualified for tenure than Mrs. Ritter, should not be granted collateral estoppel effect to bar trial before a jury of the EPA claim.

The rationale underlying this corollary to the collateral estoppel doctrine is that it guards against the use of non-essential dicta and ancillary findings to estop later liti-

gations. The collateral estoppel doctrine seeks to further the judicial interest in economical resolution of disputes, although never to the point where a litigant is denied his full and fair opportunity to present his case to a competent fact finder. Non-essential findings should not serve as the basis for collateral estoppel because the litigants might not have concentrated their energies and resources upon the full development and presentation of these issues. Thus, like the "prior suit" requirement, this requirement ensures the integrity and competence of any particular finding before it is allowed to estop collateral relitigation.

The interest of the appellant in a full and fair opportunity to present her side of the case has been protected. Mrs. Ritter conducted extensive discovery of the job statuses and salaries of her colleagues,[5] and she presented a vigorous argument to the trial court in the Title VII suit. The district court stated that the element of the Title VII suit concerning the qualifications of the plaintiff's replacement "consisted entirely of an attack upon the qualifications of John Popenfus." Moreover, the same district court which heard the Title VII case also granted the College summary judgment on the EPA claim, thus providing the appellant with even a greater degree of certainty that the court was not granting collateral estoppel effect to any fact which was given less than full hearing before the trial court.

The collateral estoppel doctrine is a judge-made rule, capable of flexible interpretation to serve the interests of judicial economy by preventing needless relitigation. This flexibility is constantly limited by the overriding principle that the courts should protect a litigant's right to a full and fair opportunity to litigate his claims. As a result, extension of the doctrine of collateral estoppel to situations not involving the identical parties to the prior suit has rightly been undertaken with great caution.

Such circumstances warranting caution are simply not present here. This case features, in comparison to the "prior" suit, the same parties, the same issues, the same facts, and even the same court. Moreover, it is obvious on the record that the appellant has had a full and fair opportunity to litigate the qualifications of Popenfus, her proposed job comparator. To decide that collateral estoppel should not obtain with regard to this finding of fact simply because this court, in its prior decision on this suit, specifically mentioned only one element of the Title VII claim in its affirmance of the lower court would constitute an abandonment of serious judicial reasoning and decision-making in exchange for the wooden application of judge-made rules designed to protect litigants in circumstances where they need protection. We therefore affirm the decision of the District Court to grant the College summary judgment on the EPA claim. We also affirm the District Court's award of costs.

AFFIRMED.

---

**5.** Indeed, it appears that the College simply turned over the key to its documentary and administrative files to the plaintiff.