**Linda H. KEZIAH, Plaintiff,**

v.

**W.M. BROWN & SON, INCORPORATED, a Virginia Corporation, Defendant.**

**No. C–C–87–255–P.**

United States District Court, W.D. North Carolina, Charlotte Division.

April 6, 1988.

Joyce M. Brooks, P.A., Charlotte, N.C., for plaintiff.

D. Blaine Sanders, Robinson Bradshaw & Hinson, P.A., Charlotte, N.C., Scott S. Cairns, Thomas G. Hardy, III, McGuire Woods Battle & Boothe, Richmond, Va., for defendant.

## MEMORANDUM OF DECISION

ROBERT D. POTTER, Chief Judge.

THIS MATTER is before the Court on Defendant's Motion for Summary Judgment in this sex discrimination case. Be-

cause the briefs of the parties adequately set out the arguments, the Court will consider the Motion without holding a hearing on the matter.

## I. SUMMARY OF FACTS

Defendant offers color lithographic printing services throughout the southeastern United States. Its printing facility is in Richmond, Virginia, where the majority of its approximately 100 employees are located. Defendant has a small sales office in Charlotte, North Carolina, staffed by "outside" sales representatives.

Defendant hired Plaintiff in August, 1984 as a sales representative for the Charlotte office. At the time, there were two other employees in the Charlotte office: Michael Dohn, a male who was hired in June, 1983, as an outside sales representative, and Edward Jones, the Regional Sales Manager, who supervised the Charlotte office and performed some sales duties as well.

Defendant compensated its sales representatives with a nine percent commission on "regular" accounts and a ten percent commission on "new" accounts. Ostensibly because Defendant anticipated that the first two years or so of a salesperson's tenure would be difficult, Defendant paid each salesperson a "draw," based on the particular salesperson's experience and projected sales. Although Defendant claims that each salesperson was expected eventually to earn sales commissions at least equaling his or her draw, the evidence of record indicates that from 1984 until 1987, neither Plaintiff nor Dohn achieved this goal.

Plaintiff testified that she was told that she would be expected to earn commissions to cover her draw, but never was given a deadline for doing so. Dohn's yearly draw was $32,500. Plaintiff's yearly draw was $22,000.

Prior to coming to Defendant, Plaintiff had been an "estimator" with Graphic South, then had moved into a sales position with that company. She left after approximately one and one-half years, during which she earned $25,000 per year. She left Graphic South to work for Defendant, a "more quality" company which she felt would be easier to sell.

Plaintiff was concerned about the amount of travel Defendant required, which she was told would be one to two nights per week out of town. She also worried that she would not be able to convince her Graphic South customers to buy the more expensive product offered by Defendant. Eventually, despite these misgivings, she accepted the job with Defendant.

According to Plaintiff's deposition testimony, there was tension in the Charlotte office from the outset. She felt that Dohn was stealing her accounts and that Defendant was looking the other way. She claims that several of her accounts were given to Dohn when she complained of his tactics. The record reveals that many accounts apparently were switched between the two sales representatives.

Plaintiff was fired effective April 1, 1987. Defendant claims that her poor job performance precipitated her firing. Plaintiff claims that her termination resulted from and evidenced discrimination against her because of her sex.

Plaintiff filed this lawsuit in June, 1987, seeking recovery under the Equal Pay Act, 29 U.S.C. § 206(d), and under state law for intentional infliction of emotional distress. By amendment, she added claims under Title VII and for negligent supervision. Defendant moves for summary judgment on all counts.

## II. EQUAL PAY ACT CLAIM

Count One of Plaintiff's Complaint states a claim under 29 U.S.C. § 206(d)(1) (1982), which reads:

(d) Prohibition of sex discrimination

(1) No employer having employees subject to any provisions of this section shall discriminate, within any establishment in which such employees are employed, between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which he pays wages to employees of the opposite sex in such establishment

for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex: Provided, that an employer who is paying a wage rate differential in violation of this subsection shall not, in order to comply with the provisions of this subsection, reduce the wage rate of any employee.

Plaintiff asserts that the sole appropriate comparator for purposes of her EPA claim is Dohn, her co-worker in the Charlotte office of Defendant. While Defendant disputes this assertion, the Court, in deciding Defendant's Motion, will accept Plaintiff's limitation of the comparison to the Charlotte employees.

█ Plaintiff must first establish that she was paid less than a male counterpart for work requiring equal skill, effort, and responsibility. Both Plaintiff and Dohn were considered to be "sales representatives." There is no real question that their jobs involved equal skill, effort, and responsibility. Defendant claims that Dohn was expected to sell more than Plaintiff, and that, therefore, Dohn's job required more skill, effort, and responsibility. The Court is not convinced by Defendant's argument, for the fact that Dohn was expected to sell more was more a reflection of qualities peculiar to *Dohn*, rather than to the *job*.

Both Dohn and Plaintiff were expected to sell Defendant's services to customers. The Court finds, for purposes of this Motion, that Plaintiff and Dohn were performing equal work.

The parties hotly dispute that there was a salary differential between Plaintiff and Dohn. The dispute arises out of Defendant's payment of a certain amount of money to each worker, regardless of his or her sales. Dohn was paid $32,500 per year; Plaintiff, $22,000.

Defendant characterizes these sums as a "draw" or "advance against commissions." It claims that the amount each worker was paid represented the amount of commissions each was expected to earn. Dohn's draw was higher because, with his experience in the field, he was expected to be able to sell more than Plaintiff, and thus to earn more in commissions. Defendant points out that the commission rate paid each employee was the same, enabling Plaintiff to earn as much as or more than Dohn if she made the requisite sales.

█ Defendant's argument has initial appeal, until the actual sales made by the two are compared. For the two years and nine months during which Plaintiff was employed, *neither she nor Dohn* ever earned commissions equivalent to his or her "draw." [1] As Plaintiff urges, the draw looks a great deal more like a base salary than Defendant will admit. The Court finds that Plaintiff has made out a *prima facie* case under the EPA.

---

1. Plaintiff proffered an exhibit prepared by her attorneys which summarizes Plaintiff's and Dohn's respective performances for each worker's first two years and for the first nine months of each worker's third year. The raw data which were summarized in the exhibit were taken from documents produced by Defendant during discovery. Affidavit of Ella R. Williams. Defendant attacks the exhibit as an inadmissible "unsworn summar[y] of unidentified documents which defendant submits are both incomplete and inaccurate." Defendant's Reply Brief 4 (Feb. 23, 1988). Significantly, however, Defendant does not dispute that Dohn never earned commissions equal to his draw, nor does it demonstrate how the summaries are inaccurate. The Court will accept the exhibit as true, cor-

rect, and accurate, for the purposes of this Motion.

The exhibit shows that Dohn posted a 34.9% deficit between "draw" and commissions for his first year, a 26.5% deficit the second year, and a 44.9% deficit for the first nine months of the third year. (The latter figure apparently was not prorated.) For Plaintiff, the corresponding deficit figures are 34.5%, 8.8%, and 50%. If, in fact, the parties had been paid *commissions only* during the two years, nine months, Dohn would have earned $21,147.93 and Plaintiff, $14,402.33 the first year; Dohn, $23,898.86 and Plaintiff, $20,060.09 the second year; and Dohn, $17,-888.00, and Plaintiff, $10,990.43 for the last nine-month period before Plaintiff was fired.

Once a plaintiff presents a *prima facie* case of an EPA violation, the defendant has the burden of showing that the pay differential was based on one of the four exceptions listed in 29 U.S.C. § 206(d)(1). *EEOC v. Whitin Machine Works, Inc.*, 635 F.2d 1095, 1097 (4th Cir.1980); *EEOC v. Aetna Ins. Co.*, 616 F.2d 719, 724 (4th Cir.1980). The employer's burden is heavy, and the exemptions must be narrowly construed. *Whitin Machine Works*, 635 F.2d at 1098; *Aetna Ins. Co.*, 616 F.2d at 724. The Court finds that Defendant has met its burden in this case.

Defendant stated in answers to interrogatories that "Mr. Dohn received a draw higher than Ms. Keziah because of his experience and customer base." Defendant's Answers and Objections to Plaintiff's First Set of Interrogatories 3. Later during discovery, Defendant explained that Dohn had ten years of experience in the printing and paper industry, mostly in outside sales and marketing. Defendant's Responses to Plaintiff's Second Set of Interrogatories 1–2. Defendant stated that Dohn had extensive contacts in the Charlotte area and was well known in the community. *Id.* at 2. Defendant's regional manager at the time Dohn was hired knew Dohn personally, and was impressed with his abilities. *Id.* at 2–3. Dohn had been president of the Charlotte Society of Communicating Arts, which position added to his reputation. *Id.* at 2; Plaintiff's Exhibit 30.

The Fourth Circuit has recognized that differences in experience, training, or ability of workers may justify differences in salary. *Aetna Ins. Co.*, 616 F.2d at 725. That court has held that, where an EPA plaintiff produced only one comparable employee, and the defendant employer demonstrated that the salary difference was attributable to the comparator's greater qualifications, the employer was entitled to summary judgment on the EPA claim. *Ritter v. Mount St. Mary's College*, 814 F.2d 986, 993 (4th Cir.1987).

Plaintiff presents only her own affidavit to contradict Defendant's claim that Dohn was better qualified than she. She avers that Dohn told her that he did not have any prior printing experience and had limited sales experience and had informed Defendant of these facts before he was hired; and that Dohn told her his previous jobs were unrelated to printing sales. Affidavit of Linda Keziah 2. Even if Dohn had told Defendant exactly what Plaintiff states he told her, Defendant's evidence of Dohn's greater experience is not contradicted. Although perhaps not selling the same product, Dohn nonetheless could be calling on the same customers in his job with Defendant as in his previous jobs. His position as president of a trade association could have given him access to potential customers for Defendant. Defendant's regional manager's opinion that Dohn was very well qualified remains unassailed. Despite the information revealed in Plaintiff's affidavit, Defendant still reasonably found Dohn's qualifications to be worth $10,500 more than Plaintiff's. Indeed, Plaintiff herself was concerned that she might not be qualified for the job. Plaintiff's deposition 24–25. Defendant has shown that Dohn's higher "salary" was "based on any other factor other than sex" and is entitled to summary judgment on Count One of the Complaint.

## III. SEXUAL HARASSMENT

In Count III of the Complaint, Plaintiff asserts a cause of action under Title VII, 42 U.S.C. § 2000e *et seq.* For ease of analysis, her claim may be separated into two parts: sexual harassment and disparate treatment. *See Katz v. Dole*, 709 F.2d 251 (4th Cir.1983) (discussing in turn plaintiff's claims of sexual harassment and of disparate treatment). In *Katz*, the Fourth Circuit adopted the Eleventh Circuit's view that actionable sexual harassment may take two forms. *Id.* at 254. One form, inapplicable here, is where " 'a supervisor demands sexual consideration in exchange for job benefits (*"quid pro quo"*).' " *Id.*, quoting *Henson v. City of Dundee*, 682 F.2d 897, 908 n. 18 (11th Cir.1982). A second type of harassment, that involving a "condition of work," occurs where the " 'harassment ... creates an offensive environment.' " *Id.* The latter fairly characterizes Plaintiff's claims here.

The *Katz* court altered the traditional Title VII disparate treatment order of proof to fit more readily the circumstances of a sexual harassment claim. To establish a Title VII sexual harassment claim, Plaintiff must show: (1) "that sexually harassing actions took place;" and (2) "that the employer knew or should have known of the harassment, and took no effectual action to correct the situation." *Katz*, 709 F.2d at 256. The employer may rebut Plaintiff's case by proving that the allegedly harassing events did not occur, "by showing that they were isolated or genuinely trivial," or by demonstrating that it took prompt action to remedy the situation and halt the harassment. *Id.*

Sexual harassment is characterized by "[u]nwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature." 29 C.F.R. § 1604.11(2). Plaintiff cites two specific instances of sexually harassing incidents in the workplace. On one occasion, she telephoned Mr. Lanio, a vice president of Defendant and the person to whom the Charlotte office reported, to inform him of her excitement over some projects she felt would come through with sales for the company. She stated that she felt she had finally come out on top, to which statement Mr. Lanio jokingly replied with a sexual comment. A second instance occurred two days after Plaintiff underwent breast surgery. She went into the office despite her recent hospitalization in order to meet Mr. Ludwig, who had been hired to oversee the Charlotte office. While Plaintiff, Mr. Lanio, Mr. Ludwig, and Mr. Dohn were walking together, Mr. Lanio asked Plaintiff if she would like to show her scars. The Court will accept, for purposes of this Motion, that these two instances satisfy Plaintiff's initial burden: they are sexually harassing incidents and Defendant knew or should have known of them, because Lanio was Plaintiff's supervisor.[2]

Certainly, Mr. Lanio's comments display a profound lack of taste, as well as an insensitivity to Plaintiff's feelings. The Court is not persuaded, however, that Plaintiff has overcome Defendant's showing that these incidents were "isolated or genuinely trivial." Two boorish comments in the course of two years, nine months do not "creat[e] an intimidating, hostile, or offensive working environment." *See* 29 C.F.R. § 1604.11(a)(3) (1987); *Katz*, 709 F.2d at 255. Though perhaps not "trivial" in Plaintiff's view, the incidents certainly were "isolated." Plaintiff's sexual harassment claim cannot stand.

## IV. DISPARATE TREATMENT CLAIM

■ Plaintiff's disparate treatment claim rests on the following instances of allegedly discriminatory treatment:

(i) Plaintiff was paid less than Dohn;

(ii) Plaintiff's first-year sales goal was higher than was Dohn's;

(iii) Dohn continuously interfered with Plaintiff's accounts and, when Plaintiff complained of Dohn's tactics, Defendant accorded Dohn preferential treatment in assigning accounts and failed to take corrective action until after Plaintiff was fired;

(iv) Defendant transferred some of Plaintiff's accounts to Dohn because the customers allegedly preferred a male sales representative;

(v) While neither Plaintiff nor Dohn met their respective sales goal, only Plaintiff was fired;

(vi) Defendant was not as cooperative when problems arose with Plaintiff's customers as when problems arose with salesmen's customers.

---

**2.** In *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 72, 106 S.Ct. 2399, 2408, 91 L.Ed.2d 49 (1986), the Court declined an invitation to define the limits of employer liability for a supervisor's sexually harassing actions. The Court did indicate, however, that the two suggested *per se* rules, *i.e.*, that employers are always liable for supervisors' acts and that employers are never liable unless they have notice of the acts, are not appropriate to the analysis. *Id.* Common law concepts of agency are a starting point. *Id.* Since arguably Lanio was Defendant's agent in this case, and since possibly Plaintiff's lone avenue of complaint was through Lanio, the Court will assume the presence of a *prima facie* case of harassment and proceed to the second part of the *Katz* analysis.

After reviewing the record in this case, the Court believes that genuine issues of fact remain, precluding summary judgment on the disparate treatment count. As one example, Plaintiff has established that she, a female, was performing her job arguably as well as a male counterpart, Dohn, was performing his job. Nonetheless, Plaintiff was fired, while Dohn was retained. Although Defendant asserts that Plaintiff's deficient performance was a legitimate nondiscriminatory reason for firing her, Plaintiff's evidence that Dohn's performance was similarly deficient is sufficient evidence of pretext to create an issue of fact. When Plaintiff's evidence that Defendant reassigned accounts on the basis of the salesperson's sex is added to the consideration, it is quite clear that Defendant is not entitled to summary judgment on the disparate treatment claim.

## V. CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

■ Count II of the Complaint is directed toward Plaintiff's claim for intentional infliction of emotional distress. Plaintiff alleges that she suffered "severe emotional distress, including anxiety, depression, humiliation and embarrassment," as a result of the following events' occurring during her employment:

(a) having her telephone messages secretly withheld and used by male Sales Representatives to usurp her prospective sales opportunities;

(b) having information secretly retrieved from her business files and her mail;

(c) having her sales orders and requests for quotes unnecessarily delayed and/or denied;

(d) having her customer accounts arbitrarily and without just cause transferred to male Sales Representatives;

(e) having higher "mark ups" set for her customers than those set for the customers of male Sales Representatives; and

(f) being harassed, humiliated and otherwise subjected to an adverse employment environment.

Complaint 2–3.

The elements of a claim for intentional infliction of emotional distress in North Carolina are: (1) extreme and outrageous conduct; (2) intent; (3) causation; and (4) severe emotional distress. Restatement (Second) of Torts § 46 (1965); *Dickens v. Puryear*, 276 S.E.2d 325, 332 (N.C.1981). In *Patterson v. McLean Credit Union*, 805 F.2d 1143 (4th Cir.1986), the Fourth Circuit considered whether a plaintiff's claims of racial harassment supported a cause of action in intentional infliction of emotional distress. The evidence on plaintiff's side tended to show that the plaintiff's supervisor "stared at [her] often, gave her too much work, required her to sweep and dust, and commented that blacks are slower than whites." *Id.* at 1146. Reviewing the trial court's direction of a verdict for defendant, the court found that such conduct did not meet the "stringent standard" of outrageousness required in North Carolina to support a cause of action for intentional infliction of emotional distress. *Id.*

An example of the kind of harassment which does satisfy the stringent standard is found in *Hogan v. Forsyth Country Club*, 79 N.C.App. 483, 340 S.E.2d 116 (1986). There, three plaintiffs sued for sexual harassment on the job. Their complaints included intentional infliction of emotional distress. The court found that one plaintiff, who had been forced to endure "nonconsensual sexual touchings, constant suggestive remarks and on-going sexual harassment" alleged sufficiently outrageous conduct that she should be allowed to present her case to a jury. *Id.* 340 S.E.2d at 121. She testified by deposition and affidavit that her supervisor

made sexually suggestive remarks to her while she was working, coaxing her to have sex with him and telling her that he wanted to "take" her. He would brush up against her, rub his penis against her buttocks and touch her buttocks with his hands. When she refused his advances, he screamed profane names at her, threatened her with bodily injury, and on one occasion, advanced toward her with a knife and slammed it down on a table in front of her. As a result of Pfeiffer's actions toward her, Cornatzer maintains

that she became very nervous, anxious, humiliated and depressed, to the extent that she was required to seek medical treatment for ulcers.

*Id.* As to the other two plaintiffs, however, the court affirmed the grant of summary judgment for the defendant. One plaintiff's evidence was

that Pfeiffer [the supervisor] screamed and shouted at her, called her names, interfered with her supervision of waitresses under her charge, and on one occasion threw menus at her. She also testified that she shouted back at Pfeiffer. This conduct lasted during the period from 22 June 1983 until her termination on 24 July 1983. The general manager, Clifford Smith, received complaints from both Hogan and Pfeiffer concerning the temper of the other. His attempt to discuss the situation with both employees was unsuccessful because Pfeiffer walked out.

*Id.* at 122–23. And, from the other unsuccessful plaintiff, the evidence tended to show

that Brennan [her supervisor] refused to grant her a pregnancy leave of absence, directed her to carry objects such as trash bags, vacuum cleaners, and bundles of linen weighing more than 10 pounds. He cursed at her on one occasion. When she requested, on 10 July 1983, to be allowed to leave work to go to the hospital, Brennan refused to grant permission. When she left without his permission, he terminated her from employment.

Plaintiff's evidence here clearly does not rise to the level of conduct " 'beyond all possible bounds of decency, and . . . regarded as atrocious, and utterly intolerable in a civilized community.' " *Id.* at 311, quoting Restatement, *supra*. Accordingly, Plaintiff cannot establish the first element of her claim, and Defendant is entitled to summary judgment.

## VI. NEGLIGENT SUPERVISION

The Court having found that Plaintiff cannot prevail on her claim for intentional infliction of emotional distress, her claim for negligent supervision, which is predicated upon the former claim, must also fail. *Hogan*, 340 S.E.2d at 124–25.

## VII. JURY TRIAL

The lone remaining cause of action is for discriminatory treatment under Title VII. Since there is no right to a jury trial in Title VII cases, Plaintiff's demand for same must be stricken. *Robinson v. Lorillard Corp.*, 444 F.2d 791, 802 (4th Cir.), *cert. dismissed*, 404 U.S. 1006, 92 S.Ct. 651, 30 L.Ed.2d 655 (1971).

Judgment will be entered in accordance herewith.

## JUDGMENT

In accordance with the Memorandum of Decision filed contemporaneously herewith,

NOW, THEREFORE, IT IS ORDERED that Defendants' Motion for Summary Judgment is *GRANTED IN PART and DENIED IN PART*, that judgment be entered in favor of Defendants on Counts I, II, and IV of the Complaint, that Plaintiff's demand for a jury trial is *STRICKEN*, and that this case is *CONTINUED* from the April Civil Jury Term and will be placed on the next Civil Non–Jury Trial Calendar.