Raymond H. WECHSLER, Administrative Trustee of the Towers Financial Corporation Administrative Trust, Plaintiff,

v.

HUNT HEALTH SYSTEMS, LTD., P & G Enterprises, Inc., MHTJ Investments, Inc., Esperanza Health Systems, Ltd. and Friendship, Inc., Defendants.

No. 94 CIV. 8294(PKL).

United States District Court, S.D. New York.

Sept. 24, 2003.

Leader & Berkon LLP by Joseph G. Colao, Esq., New York City, Gadsby Hannah LLP, Daniel J. Kelly, Esq., Boston, MA, for Plaintiff.

Brooks Banker by Brooks Banker, Jr., Esq., New York City, for Defendants.

### OPINION AND ORDER

LEISURE, District J.

Plaintiff Raymond H. Wechsler, the administrative trustee overseeing the assets of Towers Financial Corporation ("Towers"),[1] brings this action against Hunt Health Systems, Ltd. ("Hunt Health") and affiliated entities for alleged breach of contract and fraudulent conveyance in connection with the parties' factoring agreements. Defendants now move this Court, pursuant to Local Rule 6.3, to reconsider its August 8, 2003, Opinion and Order (the "Order" or "August 8 Order") granting

plaintiff's motion to bifurcate the trial. *See Wechsler v. Hunt Health Systems, Ltd.*, No. 94 Civ. 8294, 2003 WL 21878815 (S.D.N.Y. Aug. 8, 2003). Defendants contend that this Court "overlooked an undisputed fact," namely, that two defendants; Esperanza Health Systems, Ltd. ("Esperanza") and Friendship, Inc. ("Friendship"), did not waive the right to a jury trial. Defendants argue that, properly considered, this undisputed fact prevents this Court from granting plaintiff's motion to bifurcate the trial. For the reasons set forth below, defendants' motion for reconsideration is denied.

### Background

#### I. Factual History

This Court assumes familiarity with the prior decisions in this case. *See Wechsler v. Hunt Health Systems, Ltd.*, 216 F.Supp.2d 347 (S.D.N.Y.2002); 198 F.Supp.2d 508 (S.D.N.Y.2002); 186 F.Supp.2d 402 (S.D.N.Y.2002); 1999 WL 397751 (S.D.N.Y.1999). Except as indicated, the parties have stipulated to or do not contest the following facts.

Before it filed for bankruptcy, Towers engaged in the business of factoring accounts receivable, including the accounts receivable of health care providers. Hunt Health is a Texas limited partnership that was formed in 1991 to operate a drug and alcohol dependency rehabilitation center located in Hunt, Texas, doing business as "La Hacienda Treatment Center," or "La Hacienda." In 1991 and during its relationship with Towers, Hunt Health was owned by two corporate partners—defendants P & G Enterprises, Inc. ("P & G") and MHTJ Investments, Inc. ("MHTJ"). P & G and MHTJ are Texas corporations

---

1. As this Court has previously noted, by Order of United States Bankruptcy Judge Prudence Carter Beatty dated August 5, 1999, the Towers Financial Administrative Trust was termi-
nated and the Trust's claim against Hunt Health was assigned to Raymond H. Wechsler in his personal capacity.

that are both limited and general partners of Hunt Health, and each one owns 50% of Hunt Health. *See Wechsler,* 198 F.Supp.2d. at 511. During all relevant periods, Gail Gaines and Patricia McDonough owned P & G. *Id.* MHTJ was formed by John L. Givens III, Anand Mehendale, Rex Thomas, and Thomas Havard. *Id.*

On July 10, 1991, Towers executed an accounts receivable purchase contract (the "HCP Agreement") with Hunt Health. Prior to its execution, the form HCP Agreement offered by Towers was reviewed by an attorney retained by Hunt Health, and the form was amended at Hunt Health's request prior to its execution. *See id.* at 511–12. On the same date that the defendants signed the HCP Agreement, July 10, 1991, Towers entered into letter agreements (hereinafter "the Guarantees") with P & G and MHTJ. These Guarantees "set forth absolute and unconditional guaranties by P & G and MHTJ of Hunt Health's obligations and liabilities to Towers, if any." *Id.* at 511. The HCP Agreement and Guarantees contain jury waiver provisions to which defendants Hunt Health, P & G, and MHTJ are subject. *See Wechsler,* 2003 WL 21878815, at *6.

The contract failed in February 1993, thereby giving rise to the contract claims in this action, discussed below. On April 2, 1993, Givens, Mehendale, and Thomas, three of the four founders of MHTJ, created Friendship, a Texas corporation. *See Wechsler,* 198 F.Supp.2d at 513. Also on April 2, 1993, P & G and newly created Friendship formed Esperanza, a Texas limited partnership. *Id.* By written agreement then executed that same day, Hunt Health agreed to sell Esperanza some of Hunt Health's assets in exchange for Esperanza's assumption of some of Hunt Health's liabilities. *Id.* The governing bodies of Hunt Health and Esperanza are virtually identical, *id.* at *3 n. 3, and the same persons, Gaines and Givens, executed the agreement on behalf of both entities. *Id.* at *3. This transaction is the subject of plaintiff's claim for fraudulent conveyance, discussed below. The parties do not dispute that the jury waiver provisions in the HCP Agreement and the Guarantees do not apply to defendants Esperanza and Friendship.

## II. Procedural History

Plaintiff brings this action alleging breach of contract, conversion, and breach of guaranty against Hunt Health, as the obligor of the HCP Agreement, and defendants P & G and MHTJ as guarantors of Hunt Health's obligations. Defendants have brought a counterclaim against plaintiff for breach of contract. Additionally, plaintiff brings claims of constructive and actual fraudulent conveyance against Esperanza, as the transferee of assets from Hunt Health, and P & G and Friendship as general partners of Esperanza. Therefore, the claims in this case can be separated into two categories: (1) the contract claims (i.e. breach of contract, conversion, breach of guaranty, and defendants' counterclaim for breach of contract), and (2) the fraudulent conveyance claims.

In its August 8 Order, this Court held that all parties subject to the contract claims had waived the right to a jury trial. *See Wechsler,* 2003 WL 21878815, at *2–6. The contract claims thus will be tried before the bench. This Court also noted the parties' agreement that the fraudulent conveyance claims will be tried before a jury. *See id.* at *2. This Court then ordered separate trials for the contract claims and the fraudulent conveyance claims pursuant to Rule 42(b) of the Federal Rules of Civil Procedure. *See id.* at *9. In the interest of judicial economy, and in the absence of prejudice to the defendants, this Court

scheduled the bench trial to take place first. The jury trial, if necessary, would follow the bench trial.

Defendants now move for reconsideration of the Order. For the reasons set forth below, defendants' motion is denied.

## Discussion

### I. The Motion for Reconsideration Standard

■■■ Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure and Local Civil Rule 6.3, a party may move to alter or amend a judgment within ten days of its entry. As the parties are aware, a motion for reconsideration "will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." *Davidson v. Scully,* 172 F.Supp.2d 458, 461 (S.D.N.Y.2001) (Leisure, J.). The decision to grant or deny a motion for reconsideration or reargument rests in the "sound discretion of a district court judge and will not be overturned on appeal absent an abuse of discretion." *Davidson,* 172 F.Supp.2d at 462.

Defendants argue simply that bifurcation is inappropriate because defendants Esperanza and Friendship have not waived the right to a jury trial and the contract claims and fraudulent conveyance claims share common issues of fact. Defendants' Memorandum of Law in Support of Their Motion for Reconsideration, at 3 ("Defendants' Memorandum"). Plaintiff correctly responds that defendants raised the same argument in opposition to plaintiff's motion to bifurcate the trial. Plaintiff's Opposition to Defendants' Motion for Reconsideration, at 3 ("Plaintiff's Opposition"); Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Bifurcate Trial, at 9 ("Defendant's Opposition").

This Court addressed defendants' argument in its August 8 Order, and held that bifurcating the trial does not jeopardize defendants Esperanza and Friendship's right to a jury trial. *See Wechsler,* 2003 WL 21878815, at *6–9. A favorable construction of defendants' argument, however, prompts this Court to clarify and elaborate on its decision to schedule the bench trial on the contract claims before the jury trial on the fraudulent conveyance claims.

Construed favorably, defendants' argument proceeds in four steps. First, defendants Esperanza and Friendship, whom plaintiff sues only for fraudulent conveyance, have not waived the right to a jury trial. Second, the contract claims and the fraudulent conveyance claims share two common factual issues, namely, whether plaintiff is a creditor of Hunt Health and whether Hunt Health owed plaintiff a debt prior to the transfers to Esperanza. Third, by scheduling the contract claims prior to the fraudulent conveyance claims, the Court, rather than a jury, will resolve the two common issues. If the Court finds in plaintiff's favor on the common issues, then defendants Esperanza and Friendship would be collaterally estopped from re-arguing the issues before a jury. Thereby precluded, defendants Esperanza and Friendship would be deprived of the right to a jury trial protected by the Seventh Amendment to the U.S. Constitution. Fourth, this Court must schedule the fraudulent conveyance claims to proceed before the contract claims to preserve defendants Esperanza and Friendship's constitutional rights.

This Court has reconsidered its August 8 Order in light of defendants' argument. Because the contract claims and fraudulent conveyance claims do not share disputed issues, this Court rejects defendants' argument and preserves the August 8 Order.

## II. No Issues Common to the Contract Claims and Fraudulent Conveyance Claims Remain in Dispute

■ When one action includes a jury phase and a non-jury phase, the Court must be mindful of a defendant's right to a jury trial under the Seventh Amendment. The Supreme Court has held that where a plaintiff advances legal claims, which implicate the right to a jury, and equitable claims, which do not implicate the right to a jury, a defendant's "right to trial by jury may not be lost by determining the equitable claims first." *Agudas Chasidei Chabad of United States v. Gourary*, 833 F.2d 431, 438 (2d Cir.1987) (citing *Dairy Queen, Inc. v. Wood*, 369 U.S. 469, 472–73, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 510–11, 79 S.Ct. 948, 3 L.Ed.2d 988 (1959)). "[P]rior non-jury trial of the equitable claims may infringe the right to jury trial on the legal claims because of the collateral estoppel or res judicata effect of a prior judicial determination of issues common to the two sets of claims." *Dollar Sys., Inc. v. Avcar Leasing Sys., Inc.*, 890 F.2d 165, 170 (9th Cir.1989) (internal quotation marks omitted). Where equitable and legal claims in a single action do not share disputed issues of fact, however, "the order of trial is immaterial and may be left in the discretion of the court." *Id.* at 171 (quoting 9 C. Wright & A. Miller, Federal Practice and Procedure § 2305, at 35 (1971)).

Here, the contract claims and the fraudulent conveyance claims share no common, unresolved issues. Courts have found that to prevail on a fraudulent conveyance claim under New York law, a plaintiff must show, among other things, (1) "the status of plaintiff as creditor of transferors"; and (2) "the existence of a debt antecedent to the transfer." *Network Enters., Inc. v. APBA Offshore Prods., Inc.*, No. 01 Civ. 11765, 2002 WL 31050846, at *6 (S.D.N.Y. Sept. 12, 2002).[2] Defendants point to these first two elements of fraudulent conveyance, then conclude, without more, that the non-jury and jury phases of the trial share common, unresolved questions of fact. Defendants contend that the bench trial on the contract claims will resolve these two issues.[3] In its June 16, 1999, and April 18, 2002, decisions on the parties' motions for summary judgment, however, this Court resolved these common issues.

"The status of plaintiff as creditor of transferors" no longer remains at issue. This Court has already granted partial summary judgment to plaintiff, finding that defendant Hunt Health, the transferor, "was indebted to Towers for the advances Towers had made on accounts receivable as well as factoring fees asso-

---

**2.** New York Debtor & Creditor Law ("DCL") governs fraudulent conveyances in New York. Courts have varyingly formulated the elements of fraudulent conveyance. *See United States v. Coppola*, 85 F.3d 1015 (2d Cir.1996); *Network Enters.*, 2002 WL 31050846. In its 1999 summary judgment decision, this Court set out the law of fraudulent conveyances as it relates to this action. *See Wechsler*, 1999 WL 397751, at *20. In defendants' opposition to plaintiff's motion to bifurcate the trial, defendants urged that plaintiff must prove six elements to prevail on its fraudulent conveyance claim. *See* Defendants' Opposition, at 8. The Court notes that whether defendants have precisely articulated the elements of fraudulent conveyance in their opposition is without consequence, because no issues common to the contract claims and the fraudulent conveyance claims remain in dispute in any event.

**3.** The Court notes that the second element of fraudulent conveyance does not necessarily overlap with any factual issue implicit in the contract claims. Whether the issue overlaps is inconsequential, however, as this Court resolved the issue in its first summary judgment decision. *See infra.*

ciated with those advances, when the accounts failed to comply with [the parameters for reimbursable accounts in] Paragraph 8." *Wechsler,* 198 F.Supp.2d at 522.

Nor does "the existence of a debt antecedent to the transfer" remain at issue. This Court has already found it "undisputed that Towers remitted no funds to Hunt Health ... on any day after February 19, 1993." *Wechsler,* 1999 WL 397751, at *3. Defendants did not form Esperanza until April 2, 1993, and defendants do not dispute that "Hunt Health agreed to sell Esperanza certain of Hunt Health's assets." *Id.* Thus the Court resolved at summary judgment whether Hunt Health owed a debt to plaintiff prior to the alleged fraudulent transfers to Esperanza.

No issues common to the contract claims and fraudulent conveyance claims remain in dispute. For this reason, the order of the trial is "immaterial," at least with regard to defendants Esperanza and Friendship's right to a jury trial. As this Court discussed at length in its August 8 Order, however, the order of the trial is far from immaterial with regard to judicial economy and efficiency. Therefore, defendants' motion for reconsideration is denied.

### III. Defendants' Motion Lacks Legal Support

■ Assuming, arguendo, that common issues between the contract claims and the fraudulent conveyance claims remain unresolved, *Beacon Theatres* and its progeny do not compel the backwards result that defendants pursue. In *Beacon Theatres,* the Supreme Court stated the general rule that "only under the most imperative circumstances ... can the right to a jury trial of legal issues be lost through the prior determination of equitable claims." *Beacon Theatres, Inc. v. Westover,* 359 U.S. 500, 510–11, 79 S.Ct. 948, 3 L.Ed.2d 988

(1959); *see also Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962); *Wade v. Orange County Sheriff's Office,* 844 F.2d 951, 954 (2d Cir.1988). The Court has since emphasized the limits of the holding in *Beacon Theatres,* calling it "no more than a general prudential rule." *Parklane Hosiery Company, Inc. v. Shore,* 439 U.S. 322, 334, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *see Katchen v. Landy,* 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966); *Ritter v. Mount St. Mary's College,* 814 F.2d 986, 990 (4th Cir.1987). While courts generally schedule the jury trial on legal issues to take place prior to the bench trial on equitable issues, *see Dairy Queen,* 369 U.S. at 470, 82 S.Ct. 894 (disregarding argument that determination of equitable issues should precede that of legal issues even when the latter are "incidental"), courts have approved bench determinations that preclude jury determinations in some circumstances. *See Newfound Management Corporation v. Lewis,* 131 F.3d 108, 118 (3d Cir.1997) (upholding district court's prior resolution of the factual dispute because the "liberal joinder provisions of the Federal Rules," which permitted consolidating the case, "[did] not merge the suits into a single cause, or change the rights of the parties" (internal quotations omitted)); *Western Geophysical Co. of America v. Bolt Assocs., Inc.,* 440 F.2d 765, 771–72 (2d Cir.1971) (Friendly, J.) ("[W]e perceive no abuse of discretion in [the district court's] directing that, at long last, [plaintiff] should have its day in court, even if this should mean that findings by [the judge] may determine issues relating to the recently pleaded sixth counterclaim on which [defendant] is to be afforded a jury trial."); *see also Parklane Hosiery,* 439 U.S. at 335, 99 S.Ct. 645; *Katchen,* 382 U.S. at 339, 86 S.Ct. 467; *Ritter,* 814 F.2d at 990–92; *Crane Co. v. American Standard, Inc.,*

490 F.2d 332, 343 (2d Cir.1973) (Friendly, J.).

Here, applying *Beacon Theatres'* general prudential rule would work an injustice, antithetical to the very principles on which that case rests. First, defendants presumably only appeal to *Beacon Theatres* and its progeny by analogy, as this case involves no split between legal and equitable claims. Rather, the jury and non-jury phases of this trial split according to a jury waiver provision applicable to three of the five defendants. Whereas *Beacon Theatres* specifically addressed cases in which parties join law and equity claims under Rule 18(a) of the Federal Rules of Civil Procedure, here Rules 18(b) and 20 permit joining the fraudulent conveyance claim against defendants Esperanza and Friendship. Moreover, the fraudulent conveyance claims against Esperanza and Friendship arise from transactions separate from those at issue in the contract claims. The alleged fraudulent conveyances present a set of transactions entirely subsequent to those at issue in the contract claims, transacted between parties distinct from those who signed the contracts at issue in the bench trial. *Cf. Newfound Mgmt. Corp.,* 131 F.3d at 117 (approving prior bench trial, noting that "[t]his situation thus contrasts with the usual *Beacon Theatres* scenario where substantial factual overlaps occur"). As such, this case better aligns with *Parklane Hosiery* and its progeny, which confirm that parties adversely affected by a prior judgment may not evade its preclusive effect merely because it did not issue from a jury. *Parklane Hosiery,* 439 U.S. at 335, 99 S.Ct. 645.

Perhaps most important, applying *Beacon Theatres'* general prudential rule to defendants in this case would compel a curious result. Defendants Hunt Health, P & G, and MHTJ signed jury waiver clauses in the contracts at issue, clauses to which the parties agreed as part of their bargain. *See Wechsler,* 2003 WL 21878815, at *3–5, *8. After the contracts failed, thereby giving rise to the contract claims in this action, Hunt Health sold to Esperanza certain of Hunt Health's assets in exchange for it assuming certain of Hunt Health's liabilities. *See Wechsler,* 1999 WL 397751, at *3. The governing bodies of Hunt Health and Esperanza are virtually identical, *id.* at *3 n. 3, and the same parties executed the agreement on behalf of both entities. *Id.* at *3. Defendants now suggest, contrary to all logic and sensibility, that merely by virtue of this transaction between the defendants, the fraudulent conveyance claims should now be tried prior to the breach of contract claims. Defendants' argument would turn *Beacon Theatres* on its head, and this Court finds it thus without merit.

### Conclusion

For the reasons set forth above, defendants' motion for reconsideration of the August 8 Order is denied. This Court will conduct a bench trial on the contract claims, to begin during the week of October 20, 2003.

SO ORDERED.