**CONTEMPORARY MISSION, INC.,**
Appellant-Cross-Appellee,

v.

**BONDED MAILINGS, INC., and Interstate Computer Services, Inc.,**
Appellees-Cross-Appellants.

Nos. 252, 380, 415, Dockets 81–7468; 81–7526; 81–7476.

United States Court of Appeals, Second Circuit.

Argued Oct. 15, 1981.

Decided Feb. 1, 1982.

William D. O'Reilly, Westport, Conn., for appellant-cross-appellee.

Stanley Alter, New York City, for appellees-cross-appellants.

Before KAUFMAN and OAKES, Circuit Judges, and PALMIERI, District Judge.*

PALMIERI, District Judge:

This appeal and cross-appeal are from a judgment of the United States District Court for the Eastern District of New York, Mark A. Costantino, Judge, entered after a jury verdict finding the defendants liable to plaintiff on two counts for breach of oral contracts to perform certain mailing services. The damages awarded to plaintiff Contemporary Mission, Inc. (CMI) totalled $100,000 on Count One and $132,000 on Count Two. There was also an award of $750,000 in punitive damages on Count Three, to the effect that Bonded Mailings, Inc. and Interstate Computer Services, Inc., the defendant mailing companies, and their owner-officer, Max Houss (collectively, "Bonded"), knowingly and falsely represented that they had performed certain mailings. The judgment of the district court (a) upheld the verdicts on Counts One and Two from which the Bonded defendants cross-appeal, and (b) set aside the verdict for punitive damages on Count Three from which CMI directly appeals. We affirm.

---

* Hon. Edmund L. Palmieri, Senior United States District Judge for the Southern District of New York, sitting by designation.

## FACTUAL BACKGROUND

CMI, a religious organization,[1] entered into two oral contracts with Bonded, a mailer in the direct mail industry, to prepare and send over two and one-half million pieces of mail solicitations for two publications: "Guaranteed Tax Plan" ("Tax") and the "Edgar Cayce Handbook of Health" ("Cayce"). CMI alleged that Bonded breached its contracts and tortiously injured it: 1) by failing to mail out a large percentage of the solicitations; 2) by tardily mailing out those solicitations which it did mail; and 3) by intentionally misrepresenting to CMI that it had performed. CMI sought actual contract damages and punitive damages on the tort count. CMI introduced evidence of Bonded's inadequate postage meter readings to cover the mailing costs asserted, its negligible or non-existent return rates from many states to be solicited under the contract, the usual return rates, and the timely performance of all conditions precedent to Bonded's performance.

Bonded introduced evidence to the contrary on the above issues and specifically argued that CMI failed to perform conditions precedent and otherwise prevented Bonded from performing: 1) by not paying postage to Bonded in advance; 2) by not supplying in a timely manner all component inserts; 3) by removing all inserts and materials from Bonded's plant before the due date for mailing; and 4) by not receiving Post Office approval of its non-profit mailing status until it was too late to meet the contract mailing deadlines. Bonded also argued that while "time was of the essence" in the Tax mailing contract, no such agreement was reached in regard to the Cayce contract.

The jury returned with a verdict in favor of CMI on all three counts, awarding contract damages of $100,000 on Count One (Tax mailing), $132,000 on Count Two (Cayce mailing), and punitive damages of $750,000 on Count Three (intentional tort).

On Bonded's motion for a judgment notwithstanding verdict or, in the alternative, for a new trial, the district court granted a judgment notwithstanding the verdict on Count Three finding that, as a matter of law, punitive damages were unavailable, under the applicable New York law, where the underlying action lies in contract. The district court held that the third count was not properly before the jury.

## BONDED'S CLAIMS

■ The case before the trial court was, and remains, a contract dispute between CMI and Bonded. Bonded argues, however, that the trial court erred in excluding evidence which would have opened the door to an examination of whether CMI was a bona fide religious organization and a relitigation of an independent suit between CMI and a party not involved in the immediate controversy. We find that the district judge properly excluded this potentially extensive, confusing and prejudicial evidence.

■ Bonded claims that the district court should have allowed it to introduce evidence that fraud and illegality were involved in obtaining CMI's non-profit mailing permit. Bonded asserts that such evidence was relevant because the mailing permit was an integral part of the contract. We cannot disturb the trial court's evidentiary determination on this basis. If a contract is not itself unlawful, the bargain may still be illegal if it is closely connected with an unlawful act. 15 Williston, Contracts § 1752 (3d ed.) (1972). If the contract is merely collaterally rather than directly connected with the illegal act, the contract is valid. *McConnell v. Commonwealth Pictures Corp.*, 7 N.Y.2d 465, 471, 199 N.Y.S.2d

---

1. We do not herein determine, in any manner, whether CMI is in fact a genuine religious organization. *Cf. Contemporary Mission, Inc. v. United States Postal Service*, 648 F.2d 97 (2d Cir. 1981) (CMI's religious affiliation directly at issue). The record below leads us to doubt whether either CMI or Bonded is all that it purports to be. Yet it is not the task of this court to reach out to resolve all questions involving the legal, ethical or religious standing of parties embroiled in a particular controversy. Only when such issues directly affect the claims presented, can they properly be considered.

483, 166 N.E.2d 494 (1960). Since connection is a matter of degree, some illegalities are only incidental to the contract. *Id. Cf. Armstrong v. American Exchange National Bank*, 133 U.S. 433, 469, 10 S.Ct. 450, 461, 33 L.Ed. 747 (1890) ("An obligation will be enforced, though indirectly connected with an illegal transaction, if it is supported by an independent consideration, so that the plaintiff does not require the aid of the illegal transaction to make out his case.").

Here, the contract to mail solicitations at the cost of nine dollars per thousand was valid. The postal permit merely established CMI's charges for postal service. In essence, Bonded could perform its contract regardless of the postal charges. Indeed, Bonded mailed approximately 145,000 solicitations before receiving the permit which seems to indicate that the company did not consider the receipt of the permit an integral, but rather a collateral, part of the contract. Accordingly, evidence dealing with whether CMI had engaged in illegal conduct in procuring the permit could properly be determined irrelevant, and thus excludable, at trial.

■ Similarly, Bonded's claim that the trial court erred in excluding extensive cross-examination of a CMI Vice President, Reverend John T. O'Reilly, on the genuineness of his and other members' affiliation with the Roman Catholic Church, is without merit. We cannot say that the trial court erred in denying extensive questioning on this collateral, potentially confusing and prejudicial, issue which would perforce have raised a "religious problem," as observed by Judge Costantino. The trial court's ruling—which kept complicated issues of religious affiliation out of a relatively simple contract damages case—was proper. Clearly a contract dispute is not an appropriate setting for raising issues of uncertain constitutional dimension, particularly where the court must reach out to meet gossamer issues.

■ Bonded also claims that the district court erred in excluding cross-examination of CMI Vice President O'Reilly with regard to an independent action against CMI in Connecticut by Dependable Lists, Inc., the supplier of the mailing lists involved in the immediate action. This evidence was excluded as irrelevant. Once again, we cannot find that the trial court erred in precluding this evidentiary offer. In so holding, we recognize that the trial court has great latitude in determining the admissibility of evidence and its rulings will be upheld unless there is a clear abuse of discretion. *See United States v. Ravich*, 421 F.2d 1196, 1203–05 (2d Cir.), *cert. denied*, 400 U.S. 834, 91 S.Ct. 69, 27 L.Ed.2d 66 (1970); Fed.R.Evid. 403. *Accord United States v. Glenn*, 473 F.2d 191, 194–95 (D.C. Cir.1972); *Beaty Shopping Center, Inc. v. Monarch Insurance Co.*, 315 F.2d 467, 470–71 (4th Cir. 1963); *McCormick on Evidence* § 185 & n.35.

The basic issue before the trial court was whether Bonded failed to mail out CMI's solicitations in a timely fashion according to the terms of their agreement. The evidence relating to Dependable Lists is not alleged to relate to this issue. Rather, Bonded claims that the independent trial between CMI and Dependable Lists relates to the issue of damages suffered by CMI as a result of any contract breach for which it may be held liable. Particularly in light of the applicable measure of damages, as set forth below, we find that the trial court did not abuse its discretion in precluding this cumulative, potentially extensive, evidence on the allegations and merits of a separate suit between CMI and a third party.

■■ The proper measure of damage is the amount necessary to put the plaintiff in as good a position as he would have been if the defendant had abided by the contract. *Western Geophysical Co. v. Bolt Associates, Inc.*, 584 F.2d 1164, 1172–73 (2d Cir. 1978). The award can include lost profits even if the breach occurred before the profits were realized. *Id.* Once a plaintiff has been damaged, he need only demonstrate the amount of damages with reasonable certainty, and a wrongdoer has no right to insist upon a mathematically precise evaluation of damages suffered. CMI provided sufficient documentation—comparisons of

sales and costs of late mailings with test mailing of the publications as well as overhead—to permit the jury to reach a reasonable estimate of damages.

Bonded's other claims are equally without merit.

## CMI'S CLAIM

■ CMI's claim on appeal—that the district court improperly set aside the verdict for punitive damages on Count Three—is also without merit. Punitive damages are not available for "mere breach of contract." *Garrity v. Lyle Stuart, Inc.*, 40 N.Y.2d 354, 358, 386 N.Y.S.2d 831, 353 N.E.2d 793 (1976). Acts which constitute a breach of contract may also give rise to liability in tort if they violate a legal duty independent of the contractual relationship between the parties. *Hargrave v. Oki Nursery, Inc.*, 636 F.2d 897, 898–99 (2d Cir. 1980). If the only interest involved, however, is holding a party to a promise, a plaintiff will not be permitted to transform the contract claim into one for tort. *Id.*

CMI attempted to turn a breach of contract claim into a tort claim of misrepresentation. Since punitive damages are not available for breach of contract, the district judge ruled that the jury was incapable of rendering a punitive damage award. Accordingly, he properly granted that part of Bonded's motion for judgment notwithstanding the verdict dealing with punitive damages.

## CONCLUSION

The numerous challenges raised by Bonded, as well as that of CMI, are without merit. Accordingly, we affirm.

OAKES, Circuit Judge (concurring and dissenting).

I would affirm on the direct appeal and reverse and remand for a new trial on the cross appeal. Accordingly, I respectfully dissent.

As stated in Judge Meskill's opinion for the court in *Contemporary Mission, Inc. v. United States Postal Service*, 648 F.2d 97, 100 (2d Cir. 1981), a civil rights action brought by Contemporary Mission, Inc. (CMI), against the Postal Service, CMI "purports to be a not-for-profit corporation engaged in religious and charitable pursuits, and maintains its principal place of business in the State of Connecticut." It consists of a small group of Roman Catholic and Easternrite priests who through a "communications apostolate" support their organization with revenue generated from a mail-order business. CMI's line of products has included weight-reducing bath treatments, golf lessons, and tax-saving tips; CMI has used different pseudonyms in connection with the different mailing enterprises. *Id.* at 100. Involved below were alleged oral contracts by Bonded to mail 1.5 million pieces of a "Guaranteed Tax Plan" (selling for $9.95 with a "guarantee of savings of $500 or more") and 1.1 million copies of another book entitled the "Edgar Cayce Handbook of Health," a book about the life and teachings of one Edgar Cayce.

Evidently the jury found that there was an oral agreement between Reverend John T. O'Reilly, Vice President of CMI, and Bonded's President, Max Houss, to mail the Cayce solicitation pieces by the first week of November 1977, and that Bonded delayed its performance, resulting in a late mailing for the Christmas season and the loss of anticipated profits. The jury also found that Bonded agreed to mail the tax solicitation material by the middle of November 1977 so that prospective customers could receive it by the end of the tax year, but that again the mailing was delayed with a resultant loss of profits that test mailings undertaken the previous year had shown to be probable. The jury apparently rejected Bonded's defense that CMI prevented performance by not furnishing postage, various materials, and documentation in time for the mailings. But Bonded had also asserted affirmative defenses based on fraud and illegality in connection with CMI's procurement of its non-profit mailing permit. Nevertheless, the trial court excluded evidence offered to support those defenses, finding them "frivolous."

I agree with the majority and the court below that there was sufficient evidence of the oral contracts, their breach, and damages therefrom to take the case to the jury, but on the cross-appeal by Bonded I would reverse on the basis of a cumulation of what I consider were three errors occurring in the conduct of the trial, any one of which could have prejudiced the verdict. The first concerns Bonded's affirmative defense that the alleged agreements were invalid and unenforceable because CMI made them to defraud the United States Postal Service of postage and falsely represented to Bonded and the United States Postal Service that CMI was entitled to a non-profit mailing permit. In fact, as appears in *Contemporary Mission, Inc. v. United States Postal Service*, 648 F.2d at 103, the Postal Service departmentally revoked CMI's special bulk third-class mail authorization following an investigation that indicated CMI had falsely represented an affiliation with the Missionary Society of the Holy Apostles. On the basis of this representation the IRS initially in 1970 had granted CMI an exemption that CMI had used in 1975 in applying for and obtaining a permit allowing it to mail at special bulk third-class rates. An administrative appeal of the Postal Service revocation was pending at the time of *Contemporary Mission, Inc., supra*, and apparently during the trial of the case below, but CMI misled both Bonded and the court with respect to the status of CMI's exemption with the IRS. The IRS revoked CMI's "non-profit" status on September 11, 1979, and the petition to review that decision is pending before the Court of Claims. Reverend O'Reilly, Vice President of CMI, had testified in a deposition taken in January 1980 that the non-profit status was the subject of an IRS "investigation" when in fact the status had already been revoked and a petition to review had been filed on December 10, 1979.

If in fact that CMI tax exemption and third-class mail permit were obtained by fraud, not only should evidence of these facts be admissible, but as a matter of law the defense should be available to Bonded that at the time of the alleged oral contracts CMI knew that its mailing operations were illegal and that performance would constitute a fraud on the Postal Service. Under *McConnell v. Commonwealth Pictures Corp.*, 7 N.Y.2d 465, 166 N.E.2d 494, 199 N.Y.S.2d 483 (1960), a party to an illegal contract cannot ask a court of law to help him carry out his legal object. As a matter of public policy, fraud and deception practiced on a third party (here the Postal Service) will invalidate a New York contract, at least where there is a "direct connection between the illegal transaction [here obtaining a third-class mailing permit] and the obligation sued upon [breach of an oral contract to make bulk mailings]." *Id.* at 471, 166 N.E.2d at 497, 199 N.Y.S.2d at 487. *See also Reiner v. North American Newspaper Alliance*, 259 N.Y. 250, 181 N.E. 561 (1932). The district court held and the majority agrees that any illegality was merely incidental because at the time of the oral contracts to mail the permits had not been revoked, and at the time of trial the revocations were still under review, but I think the entire issue was a question for the jury below. That the non-profit status was in effect at the time the alleged oral contracts were entered into does not destroy any direct link between the alleged fraud on the Postal Service and the IRS and the contracts on which suit was brought.

In this connection I believe it was also erroneous not to permit more extensive cross-examination of Vice President O'Reilly of CMI who was the chief witness to the alleged oral contracts. He and three other officers, two of whom were witnesses, were present at the trial dressed in their clerical garb and the jury was advised that they were Roman Catholic priests. The vice president testified on direct examination that the other four members of CMI or its communications apostolate were Roman Catholic priests and that he was of the Eastern-rite Catholic Church, which he joined because priests in the Eastern-rite Church are permitted to be married. Cross-examination about whether Vice President O'Reilly and the other members of CMI were in fact Roman Catholic priests was cut

off by the court as irrelevant and as involving a "religious problem." This issue, however, is germane to the original issuance of the CMI tax exemption by the IRS as well as to its third-class mailing permit. After argument and outside the record counsel for CMI did submit to us a copy of an affidavit dated in Rome, Italy from a Reverend Diaz who purports to be a member of the Missionary Society of the Holy Apostles, a Catholic organization in Peru that maintains a seminary and college in Cromwell, Connecticut, and who states that on the Society's behalf he has maintained "constant contact" with the Contemporary Mission in order to "strengthen the spiritual association" and "foster this affiliation" between the Society and the Contemporary Mission. But I do not think this demonstrates for our purposes anything substantive bearing on the genuineness of the claims made on direct examination by Vice President O'Reilly about the Roman Catholic priesthood of the CMI members.

Furthermore, cross-examination of Vice President O'Reilly should have been permitted with regard to an action against CMI in Connecticut by Dependable Lists, Inc., another mailer. O'Reilly testified on cross examination that Dependable Lists had supplied the test list that was used to calculate the damages caused by Bonded. Dependable Lists in its Connecticut action sought damages against CMI for furnishing CMI with mailing lists at an aggregate rental value of some $322,000 on which only $3,000 had been paid. CMI had counterclaimed for some $588,000 in damages, alleging that the lists supplied by Dependable were not in accordance with test lists and that CMI consequently received a lower response than represented by Dependable when it supplied the test lists. In essence CMI was claiming the same sort of damages in defense of its Connecticut action that it was claiming as plaintiff in its Eastern District action. Although the court below was correct that the Connecticut action was a "different cause of action," the answer of CMI in the Connecticut action was an admission against interest bearing directly on what damages, if any, CMI suffered as a result of Bonded's breach. If the Dependable lists were defective, as CMI claimed in the Connecticut action, any damages CMI suffered with respect to the Bonded mailing could have resulted from CMI's supplying Bonded with these same allegedly defective lists rather than from Bonded's alleged late mailing. CMI's Connecticut counterclaim was in my view thus admissible at least on the subject of damages. In addition, when coupled with the other material in the case that was excluded, CMI's claims in the Dependable action were relevant with respect to CMI's overall credibility in the action below.

Accordingly, I would reverse the judgment and remand for a new trial. In this regard I would also note that the credibility of CMI and its witnesses, irrespective of the wearing of clerical collars, is in issue if evidence to that point is properly introduced, *see Faulkner Radio, Inc. v. FCC*, 557 F.2d 866, 870–73 (D.C.Cir.1977) (trier of fact may not be permitted automatically to credit or repudiate testimony of a witness simply because he is one of a group pursuing a particular vocation).