Raymond H. **WECHSLER**, Administrative Trustee of the Towers Financial Corporation Administrative Trust, Plaintiff,

v.

**HUNT HEALTH SYSTEMS, LTD., P & G Enterprises, Inc., MHTJ Investments, Inc., Esperanza Health Systems, Ltd. and Friendship, Inc., Defendants.**

No. 94 CIV. 8294(PKL).

United States District Court,
S.D. New York.

Aug. 27, 2002.

Leader & Berkon, LLP, New York City, Joseph G. Colao, Gadsby Hannah, LLP, Boston, MA, Daniel J. Kelly, for Plaintiff.

Abberley Kooiman, LLP, New York City, Brooks Banker, Jr., of counsel, for Defendants.

## OPINION AND ORDER

LEISURE, District Judge.

Plaintiff Raymond H. Wechsler, the administrative trustee overseeing the assets of Towers Financial Corporation ("Towers"),[1] brings the underlying action against Hunt Health Systems, Ltd. ("Hunt Health") and affiliated entities for alleged breach of contract and fraudulent conveyance in connection with the parties' factoring agreements. Defendants bring the present motion pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, seeking summary judgment on public policy grounds. Plaintiff moves for sanctions pursuant to Rule 11 of the Federal Rules of Civil Procedure in response to defendants' motion and defendants' oppose the motion seeking sanctions against plaintiff. For the following reasons, defendants' motion for summary judgment is denied and plaintiff's motion for sanctions is granted.

## I. BACKGROUND

The Court assumes familiarity with the previous decisions in this case. Because the prolix recitation of the facts has been set forth in earlier opinions of this Court,

---

1. As this Court has previously noted, by Order of United States Bankruptcy Judge Prudence Carter Beatty dated August 5, 1999, the Towers Financial Administrative Trust was terminated and the Trust's claim against Hunt Health was assigned to Raymond H. Wechsler in his personal capacity.

the Court discusses the facts only to the extent necessary to decide the instant motion.

This case was first commenced by plaintiff in November 1994 alleging breach of contract and fraudulent conveyance in connection with the parties' factoring agreements. After five years of protracted discovery and several extensions of deadlines, this Court established as firm the deadline of May 30, 1999 for filing dispositive motions. Thereafter, both parties made cross-motions for summary judgment in the summer of 1998 which the Court granted in part and denied in part. *See Wechsler v. Hunt Health Sys., Ltd.,* No. 94 Civ. 8294, 1999 WL 397751 (S.D.N.Y. June 16, 1999) (*"Wechsler I"*). As further summarized in detail below, the Court was forced to deny summary judgment on many grounds because the parties had inadequately briefed the motions and had submitted internally contradictory papers.

In their moving papers in *Wechsler I,* filed with the Court on July 1, 1998, defendants argued that "Towers was ... a massive Ponzi scheme," that its principal officers "misrepresented Towers' accounts receivable collection and factoring business, defrauded the company's bond and note holders, and plundered Towers' assets for personal gain." Defendants' Memorandum of Law in Support of Their Motion for Partial Summary Judgment, dated July 10, 1998, at 1–2. Further, defendants noted in their motion that Towers was eventually the subject of civil and criminal complaints and as a result was "unable to perform its primary obli-

gations" to Hunt Health. *Id.* Defendants argued that Towers' alleged inability to perform the Health Care Purchase Agreement with Towers ("HCP Agreement"), due to its ongoing criminal activities, constituted a material breach, excusing Hunt Health's continuing obligations to perform. *See id.* at 32. In this Court's June 16, 1999 Opinion and Order, the Court denied summary judgment in part because Towers' alleged breaches may have been excused by Hunt Health's previous alleged material breaches, and/or its voluntary early termination of the HCP Agreement. *See Wechsler I,* 1999 WL 397751, at *9.

In addition, in the same decision, the Court granted leave for plaintiff to amend his complaint to add certain additional claims against defendants, including a claim for liquidated damages arising as a result of Hunt Health's termination of the HCP Agreement. The Court found that defendants would not be prejudiced thereby because defendants had "notice of the liquidated damages dispute since October 1993, and ... the issue ha[d] been extensively addressed in discovery." *Wechsler I,* 1999 WL 397751, at *15. Thereafter, plaintiff filed his First Amended Complaint on July 12, 1999. On July 19, 1999, defendants filed their First Amended Answer in which defendants attempted to add 21 new affirmative defenses and to substitute a new claim for rescission, without seeking leave of the Court. Many of these new defenses and the claim for rescission were based on a theory of fraud and illegality not previously raised by defendants at any point in the litigation prior to that date.[2]

---

2. This new theory of the case was premised upon the notion that "the HCP Agreement was from the beginning (1) 'tainted with illegality' and unenforceable; and (2) fraudulently induced and therefore subject to rescission." *Wechsler v. Hunt Health Sys. Ltd.,* 186 F.Supp.2d 402, 416–17 (S.D.N.Y.2002) (*"Wechsler II"*). Among the affirmative defenses defendants sought to add were the de-

fenses that the HCP Agreement was "unenforceable" "by reason of Towers' unclean hands" (Fourth Affirmative Defense); "by reason of Towers' breach of the implied covenant of good faith and fair dealing" (Fifth Affirmative Defense); "by reason of Towers' fraud upon defendants" (Sixth Affirmative Defense); "by reason of illegality and Towers'

Plaintiff moved to strike and dismiss the new allegations, affirmative defenses, and counterclaims asserted in defendants' First Amended Answer and defendants responded by moving to amend their answer *nunc pro tunc*, and to conduct further discovery. *See* Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Strike and Dismiss and in Support of Defendants' Motion for Leave to Amend Answer *Nunc Pro Tunc* and to Conduct Further Discovery, dated August 26, 1999. Although acknowledging that their defenses and counterclaims based on fraud and illegality were new and thoroughly contradicted their binding admissions, defendants blamed the plaintiff for failing to disclose the facts underlying these new claims. In support of their motion to amend their answer, defendants relied principally on the same documentary evidence attached to their current motion for summary judgment, with testimony of S.E.C. counsel, Dorothy Heyl, Towers accountant Arthur Ferro, and Towers' Vice President Charles Chuggerman. *See* Affirmation in Support of Defendants' Motion for Summary Judgment, sworn to by Brooks Banker, Jr., Esq., dated May 31, 2002 ("Banker Aff."), Exs. G–I.

On February 20, 2002, this Court denied defendants leave to amend their answer *nunc pro tunc*, noting that fact discovery had been closed since 1998, after years of "extensive discovery" and that the initial summary judgment motion had been decided in June 1999. *See Wechsler v. Hunt Health Sys. Ltd.*, 186 F.Supp.2d 402, 417 (S.D.N.Y.2002) (*"Wechsler II."*). Moreover, this Court concluded at that time that defendants did not offer a reasonable explanation was to why the evidence should be considered "new" especially because defendants had long been aware of

Towers' illegal activities. *See id.* at 418. In particular this Court noted that defendants knew of the criminal activity "at the time they terminated the HCP Agreement in February 1993, at the time they filed their November 12, 1993 Proof of Claim, at the time they filed their original answer and counterclaim in January 1994, and at the time they filed their dispositive motion in July 1998." *Id.* Further, the Court made it clear that despite their knowledge of Towers' illegal activities, up until defendants' belated motion to amend their answer, they had chosen to pursue a breach of contract defense and claim based on conduct by Towers commencing in February 25, 1999, and not an action based upon a theory of fraud and illegality. *See id.* In prior binding admissions, defendants admitted the validity and enforceability of the HCP Agreement, its amendments, and the Guarantees. Defendants' contention up until that point in the litigation was not that the agreements were from the very beginning fraudulently induced and unenforceable, but rather that *after* Towers' alleged breach on February 25, 1993, these agreements ceased to be valid and enforceable. *See id.*

Most importantly, this Court held that such a radical shift in gears would be unduly prejudicial to the plaintiff at that point in the case. *See id.* Plaintiff rightfully assumed that this new theory of the case was not an issue and, as a result, an examination of the underpinnings of the new theory would require an entirely new round of discovery that would substantially delay the resolution of the action. *See id.*

On April 18, 2002, this Court decided plaintiff's renewed motion for partial summary judgment, the last pending dispositive motion, and ordered the parties to

---

reliance thereon to further its Ponzi scheme" (Seventh Affirmative Defense); and "by reason of public policy" (Eight Affirmative De-

fense). Defendants' First Amended Answer, dated July 19, 1999, ¶¶ 107–111.

appear for a pre-trial conference on May 6, 2002 in order to set a trial date and a date for submission of the pre-trial order. *See Wechsler v. Hunt Health Systems, Ltd.,* 198 F.Supp.2d 508 (S.D.N.Y.2002) (*"Wechsler III"*). On May 1, 2002, days before the scheduled conference, defendants submitted a letter to the Court indicating the possibility that defendants would make a motion to dismiss the complaint on public policy grounds. *See* Letter to Judge Leisure from Brooks Banker, Jr., Esq., dated May 1, 2002. At the pre-trial conference on May 6, 2002, defendants' counsel, Mr. Banker, reiterated his intent to file the present motion, an intention that plaintiff's counsel strongly opposed. The Court noted at that time that it cannot prevent a party from bringing a motion it is entitled to bring under the Federal Rules of Civil Procedure, but threatened sanctions against defendants if, after reviewing the motion, the Court found the motion to be frivolous.[3] Plaintiff requested that the Court set a trial date, but because of the forthcoming motion the Court was forced to delay scheduling dates for submission of the pre-trial order and the trial date, and

instead set a briefing schedule for the present motion.

Thereafter, on May 31, 2002, defendants filed the present motion for summary judgment based upon public policy grounds. After seeking leave of the Court, plaintiff subsequently filed a motion for sanctions on July 26, 2002.

## II. DISCUSSION

### A. Procedure

This case was originally filed in November 1994, nearly eight years ago. Since that original filing, the parties have engaged in years of protracted discovery and have filed separate summary judgment decisions, a motion for reconsideration, various motions to strike, and a motion to amend. The Court has attempted at each phase of this complex case to clarify the issues in dispute in an effort to streamline the case for trial. Much of the delay in resolving this laborious case has resulted from both parties' continued failure to communicate and their often inadequate submissions to the Court. The Court has indicated to the parties at various times throughout this litigation its consternation with this manner of proceeding.[4]

---

3. It is well settled that this Court cannot prevent a party from making a motion that it is entitled to bring under the Federal Rules of Civil Procedure. *See Eisemann v. Greene,* 204 F.3d 393, 397 (2d Cir.2000) ("Although we have recognized that it is within the judge's discretion to hold a pre-motion conference for the purpose of persuading a party not to file a perceived meritless motion, we have made it clear that the judge may not require that the court's permission be secured at such a conference before a party may file the motion.") (internal quotations omitted); *see also Richardson Greenshields Secs., Inc. v. Lau,* 825 F.2d 647, 652 (2d Cir.1987) ("Absent extraordinary circumstances, such as a demonstrated history of frivolous and vexatious litigation, or a failure to comply with sanctions imposed for such conduct, a court has no power to prevent a party from filing pleadings, motions or appeals authorized by the Federal Rules of Civil Procedure.") (internal citations omitted).

4. Indeed, in the most recently decided dispositive motion, the Court chastened that "[i]t should be stressed that the Court has been sorely disappointed by the vitriolic tone of this litigation that has proven to be, at times, quite unproductive. Although attorneys should, by all means, represent their clients' interests fully during the course of a litigation, the tortured history of this case reveals that combativeness is not always the most efficient route." *Wechsler III,* 198 F.Supp.2d at 529. Moreover, the Court's frustration was noted as early as the first summary judgment decision decided on June 16, 1999. *See Wechsler I,* 1999 WL 397751, at *4 ("[T]he Court notes its consternation at the parties' severe underdevelopment or outright omission of arguments ... as well as ... presentation of arguments that seem to contradict other arguments made by the same party. These shortcomings have ... made the Court's assessment far more onerous that it should have been....").

The current motion follows in line with this pattern. This Court denied defendants' motion to amend *nunc pro tunc* in *Wechsler II*, based in large part upon the binding admissions made by defendants concerning the validity of the HCP Agreement, and the prejudice that plaintiff would suffer as a result of defendants seeking to change their entire theory of the case. *See Wechsler II*, 186 F.Supp.2d at 419. Instead of seeking a motion for reconsideration of that denial, or instead of submitting to the Court their public policy non-waiver theory in that motion to amend, defendants waited until this late stage of the case to file a new summary judgment motion.

The current motion, stylized as a summary judgment motion, is in essence an attempt to obtain reconsideration of the Court's February 20, 2002 decision in *Wechsler II* denying defendants' motion to amend their answer *nunc pro tunc*. As the defendants well know, a motion for reconsideration pursuant to Local Civil Rule 6.3 must be brought within 10 days of the judgment, a deadline that had long since passed at the time they filed the present motion.

Defendants now urge the Court to grant summary judgment based upon one of the very claims they sought to be amended to their answer, that "the agreements executed between Towers and Hunt Health were used by Towers in furtherance of federal criminal violations, and as such, are unenforceable by plaintiff on the grounds of public policy." Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment, dated May 31, 2002 ("Defs.' Mem."), at 7. While acknowledging that their answer does not contain the public policy defense, defendants argue

that "such omission does not bar a substantive determination on the criminality of Towers' healthcare factoring scheme." *Id.* Recognizing their inherent problem in that this Court already denied a motion to amend their answer to add this defense, defendants add in a footnote that "[a]lthough in its February 2002 opinion, the Court accepted Plaintiff's argument that, *as a matter of procedure*, defendants could not amend their answer to include a defense based on fraud, the Court has never ruled or opined on the *merits* of defendants' public policy claim." *Id.* at 7 n. 4 (emphasis in original). However, the Court did not reach the merits of defendants' illegality and fraud defenses and theories in *Wechsler II* precisely because the motion to amend failed procedurally, and so the Court held it need not consider the merits of any of the new affirmative defenses and allegations.[5]

Defendants acknowledge the distinction between a motion to amend and a summary judgment motion. They argue in one instance that there is an "essential difference" between "a Rule 15 motion to amend, which is procedural, and a Rule 56 motion for summary judgment, which is substantive." Defendants' Reply Memorandum of Law, dated June 28, 2002 ("Defs' Reply"), at 5. However, defendants then go on to justify the filing of this current motion by highlighting "the Court's *refusal* to address the merits of defendants' public policy defense." Defendants' Memorandum in Opposition to Plaintiff's Motion for Sanctions, dated Aug. 6, 2002 ("Defs' Opp. Sancts."), at 6 (emphasis added). These two statements elucidate the contradiction in defendants' positions. In order to surmount this problem, defendants for the first time raise the is-

---

**5.** Indeed the Court held that it did not need to analyze plaintiff's "futility" argument attacking the substance of the proposed amendment because the Court had "otherwise denied leave to amend based on undue delay and prejudice." *Wechsler II*, 186 F.Supp.2d at 419 n. 9.

sue that a defense based upon public policy and illegality cannot be waived.

■ Generally, pursuant to Rule 8(c) of the Federal Rules of Civil Procedure, failure to plead an affirmative defense under Rule 8(c) results in a waiver of that defense and its exclusion from the case. *See* Fed.R.Civ.P. 8(c). However, some courts have held that an affirmative defense alleging that a contract is illegal and should not be enforced on public policy grounds presents an exception to that general rule. *See, e.g., Kidder, Peabody & Co. v. IAG Int'l Acceptance Group,* No. 94 Civ. 4725, 1999 WL 11553, at * 13 (S.D.N.Y. Jan.13, 1999) (denying motion to strike illegality defense). Defendants cite several cases to support this theory, but in each case the court permitted the party to assert the defense only after deciding that the plaintiff would not be prejudiced thereby. *See, e.g., General Star Indem. Co. v. Platinum Indem. Ltd.,* No. 00 Civ. 4960, 2001 WL 883649, at *2 (S.D.N.Y. Aug.7, 2001) (no prejudice in allowing amendment to include illegality defense); *Kidder,* 1999 WL 11553, at *14 (no waiver where failure to plead did not prejudice plaintiff because defendant raised illegality issue in several prior depositions). Because the Court has already held, in denying the motion to amend *nunc pro tunc* in *Wechsler II,* that plaintiff will be prejudiced if defendants were to completely shift gears and assert this defense at this point in the litigation, resulting in a probable new round of discovery, the Court finds that defendants have waived this defense and the present motion is procedurally improper.

### B. *Substantive*

Because the Court has denied defendants' request to include a public policy defense, the Court need go no further. However, for the sake of thoroughness, the Court notes that, even if defendants were correct that they have not waived the pub-

lic policy defense, and even if the Court were to grant leave to amend the answer to include such a defense, the Court would deny summary judgment on this ground for the following reasons.

A moving party is entitled to summary judgment if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Holt v. KMI–Continental Inc.,* 95 F.3d 123, 128 (2d Cir.1996). When considering a motion for summary judgment, the Court's responsibility is not "to resolve disputed issues of fact but to assess whether there are any factual issues to be tried." *Knight v. U.S. Fire Ins. Co.,* 804 F.2d 9, 11 (2d Cir.1986). In determining whether genuine issues of material fact exist, the Court must resolve all ambiguities and draw all justifiable inferences in favor of the nonmoving party. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Holt,* 95 F.3d at 129.

The moving party bears the burden of demonstrating that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1223–24 (2d Cir.1994). "[T]he movant's burden will be satisfied if he can point to an absence of evidence to support an essential element of the nonmoving party's claim." *Goenaga v. March of Dimes Birth Defects Found.,* 51 F.3d 14, 18 (2d Cir.1995). Once the moving party discharges his burden of demonstrating that no genuine issue of material fact exists, the burden shifts to the nonmoving party to offer specific evidence showing that a genuine issue for trial exists. *See Celotex,* 477

U.S. at 324, 106 S.Ct. 2548. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "A 'genuine' dispute over a material fact only arises if the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *Dister v. Continental Group,* 859 F.2d 1108, 1114 (2d Cir.1988) (quoting *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505).

It is beyond cavil that federal courts will not enforce illegal promises. *See Kaiser Steel Corp. v. Mullins,* 455 U.S. 72, 77, 102 S.Ct. 851, 70 L.Ed.2d 833 (1982). Indeed, the Supreme Court has opined that:

> a federal court has a duty to determine whether a contract violates federal law before enforcing it. "The power of the federal courts to enforce the terms of private agreements is at all times exercised subject to the restrictions and limitations of the public policy of the United States as manifested in ... federal statutes .... Where the enforcement of private agreements would be violative of that policy it is the obligation of courts to refrain from such exertions of judicial power."

*Id.* at 83–84, 102 S.Ct. 851 (citing *Hurd v. Hodge,* 334 U.S. 24, 34–35, 68 S.Ct. 847, 92 L.Ed. 1187 (1948) (footnotes omitted)). Much of the case law that has developed concerns cases involving contracts made in connection with antitrust conspiracies. In those cases, courts have signaled that the determinative question in deciding if a contract is void and unenforceable, is whether the contract at issue constituted " 'an intelligible economic transaction in itself.' " *Viacom Int'l Inc. v. Tandem Productions, Inc.,* 526 F.2d 593, 597 (2d Cir.1975) (quoting *Kelly v. Kosuga,* 358 U.S. 516, 79 S.Ct. 429, 3 L.Ed.2d 475 (1959)). When that is

true, enforcement of the contract would not make the courts a party to "the carrying out of the very restraints forbidden by' or 'the precise conduct made unlawful by' the [relevant statute]." *Id.* Thus, if a contract is not itself illegal, the bargain may still be illegal if it is closely connected with an unlawful contract. *See Contemporary Mission Inc. v. Bonded Mailings, Inc.,* 671 F.2d 81, 83 (2d Cir.1982) (citing 15 Williston, Contracts § 1752 (3d ed.) (1972)); *Bankers Trust Co. v. Litton Sys., Inc.,* 599 F.2d 488, 491 (2d Cir.1979) ("[A] contract would be unenforceable in a suit brought by the wrongdoer if there were a direct connection between the illegal bribe and the obligation sued upon ...."). Therefore, if a contract is merely collaterally and not directly connected with the illegal act, the contract will be valid and enforceable. *See Contemporary Mission,* 671 F.2d at 83 (citing *McConnell v. Commonwealth Pictures Corp.,* 7 N.Y.2d 465, 199 N.Y.S.2d 483, 166 N.E.2d 494 (1960)).

Underlying this precedent is the Supreme Court's paramount concern with the risk of generating a windfall for the moving party. A court must be careful in its analysis before declaring certain contracts to be void, because there is a general policy "of preventing people from getting other people's property for nothing when they purport to be buying it." *Kelly,* 358 U.S. at 520–21, 79 S.Ct. 429 (quoting *Continental Wall Paper Co. v. Louis Voight & Sons Co.,* 212 U.S. 227, 271, 29 S.Ct. 280, 53 L.Ed. 486 (1909) (Holmes, J., dissenting)); *see Viacom,* 526 F.2d at 599 ("[T]he overriding consideration ... is ... that the successful interposition of [illegality] defenses is too likely to enrich parties who reap the benefits of a contract and then seek to avoid the corresponding burdens."). Indeed, courts must be mindful of the general rule that " 'competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and en-

forced in the courts' unless a violation of the law or public policy is clear and certain." *Wheelabrator Envtl. Sys., Inc. v. Galante*, 136 F.Supp.2d 21, 30 (D.Conn. 2001) (quoting *Twin City Pipe Line Co. v. Harding Glass Co.*, 283 U.S. 353, 356–57, 51 S.Ct. 476, 75 L.Ed. 1112 (1931)).[6]

Defendants argue that although the HCP Agreement when considered in a vacuum is "seemingly valid and enforceable," in the context of "Towers' elaborate, massive Ponzi scheme, any aura of legitimacy surrounding those contracts quickly and thoroughly dissipates." Defs' Mem. at 11. They go on to contend that there is no dispute that Towers used the proceeds of the HCP Agreement "as a vehicle to promote its Ponzi scheme." *Id.* Key to their position is the assertion that the case law supports the idea that the central question in determining whether a contract should be declared void on public policy grounds is whether Towers entered into the agreement for "an illegal purpose." Defs' Mem. at 11 (citing *Sender v. Simon*, 84 F.3d 1299, 1307 (10th Cir.1996)). Defendants' principal reliance on *Sender* holds no precedential value for this Court, and further, the facts of that case differ markedly from the facts of the present case.

In *Sender*, a Tenth Circuit case, the plaintiff sued upon the same investment vehicles which were the basis for the Ponzi scheme at issue in that case. *See* 84 F.3d at 1308 ("[T]his court will not aid the effort of a fraudulent entity that used the trappings of legal formality to lure its victims to turn around and try to hold its victims accountable under those same legal formalities."). In essence, the Court held the agreements to be unenforceable because investors were induced to enter them based on fraudulent and illegal promises as to the investment's health and profitability.

In this case, the investment vehicle which formed the basis of Towers' Ponzi scheme, that is, the notes and bonds obtained by Towers based on fraudulent misrepresentations as to the value of the investment, are not directly at issue. Instead, defendants are seeking to "invalidate a contract that is collateral to the investment vehicles, pursuant to which defendants admit that Towers performed valid services of which it obtained the benefit in consideration of paying a fee for its factoring services." Pl's Opp. at 10 n. 7. It seems to be collateral to the HCP Agreement itself that the value of the accounts receivable purchased by Towers from Hunt Health may have been exaggerated in Towers' representations *to its bond bolder investors.*[7]

---

**6.** Defendants assert that if the Court should declare the HCP Agreement to be unenforceable they will not be the recipients of a windfall because the accounts assigned to Towers went largely uncollected and they were worth in excess of $2,000,000. *See* Defs' Reply at 7 n. 11; Defs' Mem. at 17–18. Moreover, they argue because public policy is concerned with the interests of justice and not the interests of individual parties, even if defendants would be the beneficiaries of such a windfall, they are still entitled to judgment as a matter of law. *See* Defs' Reply, at 7 n. 11; Defs' Mem. at 9. The Court finds no merit to these assertions. As the following discussion makes clear, the Court does not find that the HCP Agreement and its related agreements constitute a clear and certain connection to illegality that would violate public policy. Both parties freely entered into this contract, an "intelligible economic transaction in itself," and received benefits from it.

**7.** Defendants contend that testimony of Arthur Ferro, Towers' accountant, from the Towers' criminal trial supports the fact that the HCP Agreement was entered into for a "wrongful purpose." Defs' Mem. at 12 n. 12. They cite Ferro's statement that before entering into the healthcare business, Mitch Brater felt that it could be the "salvation of the company." *See id.* (citing Banker Aff., Ex. H, at 807).

■ Drawing all reasonable inferences in plaintiff's favor, the Court finds, therefore, that even if the public policy defense had not been waived, and it has, there remains a genuine issue of material fact with regard to a public policy defense and that summary judgment in favor of defendants is denied. Assuming that defendants also are seeking leave to amend their answer to include this defense at trial,[8] that request is denied as it is the law of the case that they were denied leave to amend *nunc pro tunc* in *Wechsler II*,[9] and the Court now holds that they have waived this defense for trial.

### III. *SANCTIONS*

Plaintiff moves for sanctions against defendants and/or their counsel pursuant to Fed.R.Civ.P. 11(c) and 28 U.S.C. § 1927. *See* Plaintiff's Memorandum of Law in Support of Plaintiff's Motion for Sanctions, dated June 26, 2002 ("Pl's Mem Sancts."), at 1. Pursuant to Rule 11(b),

> [b]y representing to the court . . . a . . . written motion . . ., an attorney . . . is certifying that to the best of the person's knowledge, information, and belief,

formed after an inquiry reasonable under the circumstances,—

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for extension, modification, or reversal of existing law or the establishment of new law; . . . .

Fed.R.Civ.P. 11(b).

■ A pleading, motion, or paper violates Rule 11 if it is frivolous, legally unreasonable, or factually without foundation, even though not signed in subjective bad faith. *See Simon DeBartolo Group, L.P. v. The Richard E. Jacobs Group, Inc.*, 186 F.3d 157, 167 (2d Cir.1999) ("To constitute a frivolous legal position for purposes of Rule 11 sanctions, it must be clear under existing precedents that there is no chance of success and no reasonable argument to extend, modify or reverse the law as it stands.") (internal quotations omitted).

---

**8.** Defendants presume, in their response to plaintiff's motion for sanctions, that if the Court denies summary judgment, "the public policy issue will be decided at trial." Defs' Opp. Sancts. at 2 n. 3. This arguably evinces an intent on the part of defendants to utilize this summary judgment motion to bypass this Court's ruling denying their motion to amend in *Wechsler II*.

**9.** *See DiLaura v. Power Auth. of State of New York*, 982 F.2d 73, 76 (2d Cir.1992) (McLaughlin, J.) ("The law of the case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.' ") (quoting *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988)); *Wilder v. Bernstein*, 645 F.Supp. 1292, 1310 (S.D.N.Y.1986), *aff'd*, 848 F.2d 1338 (2d Cir.

1988) (law of the case doctrine counsels against re-opening issues absent compelling circumstances, such as intervening changes of controlling law, availability of new evidence, or the need to correct a clear error or manifest injustice). Indeed, the law of the case doctrine ensures "the orderly progress of court proceedings." *Siderpali, S.P.A. v. Judal Indus., Inc.*, 833 F.Supp. 1023, 1027 (S.D.N.Y.1993). Moreover, the Second Circuit has indicated that generally, "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." *International Ore & Fertilizer Corp. v. SGS Control Servs., Inc.*, 38 F.3d 1279, 1287 (2d Cir.1994) (citing *Zdanok v. Glidden Co., Durkee Famous Foods Div.*, 327 F.2d 944, 953 (2d Cir.), *cert. denied*, 377 U.S. 934, 84 S.Ct. 1338, 12 L.Ed.2d 298 (1964)).

Plaintiff also seeks sanctions under 28 U.S.C. § 1927, which provides in pertinent part that:

> [a]ny attorney ... who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct

28 U.S.C. § 1927.

"By its terms, § 1927 looks to unreasonable and vexatious multiplications of proceedings; and, it imposes an obligation on attorneys throughout the entire litigation to avoid dilatory tactics." *United States v. International Bhd. of Teamsters*, 948 F.2d 1338, 1345 (2d Cir.1991) (McLaughlin, J.). The purpose of the statute is to deter unnecessary delays in litigation and bad faith is the "touchstone of an award under [the] statute." *Id.* The court's factual findings of bad faith must be characterized by "a high degree of specificity." *Milltex Indus. Corp. v. Jacquard Lace Co., Ltd.*, 55 F.3d 34, 37–38 (2d Cir.1995) (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1272 (2d Cir.1986), *cert. denied*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987)). However, courts will infer bad faith "when the attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay." *ACLI Gov't Secs., Inc. v. Rhoades*, 907 F.Supp. 66, 68 (S.D.N.Y.) (citing *Keller v. Mobil Corp.*, 55 F.3d 94, 99 (2d Cir.1995)).[10]

■ The procedural background of this motion for summary judgment supports an inference of bad faith in bringing this motion. Defendants sought to amend their answer, first without leave of the Court, and then sought amendment *nunc pro tunc* on the precise issue of *inter alia* the defense of public policy, all without raising the legal issue regarding non-waiver of public policy defenses. Instead of bringing a motion for reconsideration, on the eve of this Court's pre-trial conference to set a trial date for what has become a case of Byzantine complexity, defendants sought this procedurally unsound motion for summary judgment. In this case, therefore, the Court finds bad faith on the part of defendants for filing this motion and sanctions are warranted. *See Virgin Atlantic Airways, Ltd. v. National Mediation Board*, 956 F.2d 1245, 1254 (2d Cir.), *cert. denied*, 506 U.S. 820, 113 S.Ct. 67, 121 L.Ed.2d 34 (1992) (affirming Rule 11 sanctions even though district court erred in denying original motion to dismiss, because district court did not impose sanctions for substance of defendant's motion, but rather because making the subsequent motion at that juncture, given Local Rule 3(j) and the law of the case doctrine, was not justified by existing law or a good faith argument for the extension, modification, or reversal of existing law).

---

**10.** There are significant differences between a motion for sanctions under Rule 11 and § 1927. As the Second Circuit has noted, Rule 11 sanctions may be imposed on both counsel and client, while § 1927 applies only to counsel; a Rule 11 violation must be based on signed pleadings, motions, or other papers, while § 1927 violations do not depend on the presence of a paper; Rule 11 may not be used to sanction obnoxious conduct during the course of the litigation; whereas § 1927 applies to the unreasonable and vexatious multiplication of court proceedings. Further, Rule 11 requires only a showing of objective unreasonableness on the part of the attorney or client signing the papers, but § 1927 requires more: subjective bad faith by counsel. Finally, misconduct under Rule 11 must be judged as of the time the paper was signed, whereas § 1927 invites attention to a course of conduct, and imposes a continuing obligation on attorneys to avoid dilatory tactics. *See International Bhd. of Teamsters*, 948 F.2d at 1345–46.

Therefore, because defendant has sought to needlessly delay this action, and because the Court finds the motion was objectively unreasonable and brought in bad faith, plaintiff's motion for sanctions pursuant to Rule 11 and § 1927 is granted.[11] Plaintiff's attorneys are directed to submit an affidavit setting forth the total hours spent and legal services rendered in connection with defendants' summary judgment motion and plaintiff's motion for sanctions, as well as counsel's hourly fee.[12]

## IV. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is hereby DENIED; and plaintiff's motion for sanctions is hereby GRANTED. Both parties are ORDERED to appear for a pre-trial conference before this Court in Courtroom 18B at the United States Courthouse, 500 Pearl Street, New York, New York, on September 9, 2002 at 10:30 a.m. when the Court will set a trial date and a date for submission of the pre-trial order.

**SO ORDERED.**

---

11. The Court, therefore, declines to grant defendants' request for sanctions in responding to plaintiff's motion for sanctions.

12. Attached to the Affidavit of Daniel J. Kelly, Esq. in Support of Plaintiff's Motion for Sanctions, sworn to on June 27, 2002 ("Kelly Aff."), as Exhibit 5 is an affirmation by Mr. Kelly of the legal fees and expenses incurred as of June 19, 2002 in connection with plaintiff's opposition to defendants' motion for summary judgment and plaintiff's motion for sanctions. The motion for sanctions was first filed under the "safe harbor" provisions of Rule 11(c)(1)(A) (entitling defendants 21 days to withdraw their motion before the Rule 11

motion is filed with the Court). Therefore, plaintiff must supplement the list of fees and expenses incurred up until the time of filing on July 26, 2002. However, it should be noted that the Court has reviewed the list of fees and expenses through June 19, 2002, as explicated in Exhibit 5 of the Kelly Aff., and notes that defendants need not pay for all fees and expenses regarding the May 6, 2002 conference. That conference was scheduled as a pre-trial conference and would have taken place regardless of defendants' motion for summary judgment. Accordingly, $2,625 in time billed and $987.95 in ground transportation, parking, business meal, and travel expenses shall be deducted from the total sum.